■ ALDO RUBEIS et al., Plaintiffs, v AQUA CLUB, INC., Doing Business as V.I.P. TENNIS & BEACH CLUB, LTD., Defendant and Third-Party Plaintiff-Respondent, et al., Defendant. VENEZIA IRON WORKS, INC., Third-Party Defendant-Appellant. [761 NYS2d 659] —In an action to recover damages for personal injuries, etc., the third-party defendant, Venezia Iron Works, Inc., appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Rockland County (Weiner, J.), entered September 11, 2000, as, upon the denial of its motion pursuant to CPLR 4401 for judgment as a matter of law dismissing the third-party complaint, is in favor of the third-party plaintiff and against it.

Ordered that the judgment is reversed insofar as appealed from, on the law, with costs, the motion of the third-party defendant is granted, and the third-party complaint is dismissed.

The plaintiff Aldo Rubeis was seriously injured after falling from a ladder while installing a steel cupola at the defendant third-party plaintiff, Aqua Club, Inc., doing business as V.I.P. Tennis & Beach Club, Ltd. (hereinafter Aqua Club). He sustained brain damage, among other injuries. After the plaintiffs commenced this action against Aqua Club, it impleaded Venezia Iron Works, Inc., the injured plaintiff's employer, alleging a cause of action for common-law indemnification and contribution. Aqua Club alleged that the injured plaintiff's brain injury constituted a grave injury within the meaning of Workers' Compensation Law § 11.

During the damages portion of the bifurcated trial, the plaintiffs' witnesses testified that the injured plaintiff experienced softening of his brain, blindness in one eye, loss of his sense of smell, and an overall grave impact on his brain function. Though capable of performing simple tasks, he could never be gainfully employed with any degree of responsibility and certainly not as an ironworker. His brain injury also severely restricts his physical activities, although he can carry up to 35 pounds for short periods of time, including packages from the grocery store, but excluding any tasks requiring accuracy. His temperament and behavior in social situations have been adversely affected.

At the close of the plaintiffs' evidence on damages, the third-party defendant moved to dismiss the third-party complaint on the ground that the injured plaintiff had not sustained a "grave

injury." The Supreme Court denied this relief without prejudice. The third-party defendant offered proof relating to grave injury, and the Supreme Court submitted the issue to the jury after denying another motion by the third-party defendant to dismiss the third-party complaint. In determining whether the injured plaintiff sustained a grave injury, the Supreme Court charged the jurors that they should consider whether he would be unable to return to any employment and whether he can perform the usual and customary tasks of ordinary day-to-day living. The jury found that the injured plaintiff sustained a grave injury. The Supreme Court denied the third-party defendant's motion to set aside the verdict.

For a third-party plaintiff to recover contribution or indemnification from the employer of an injured plaintiff, it must establish that the plaintiff sustained a grave injury. As relevant to this case, this term is defined as "an acquired injury to the brain caused by an external physical force resulting in permanent total disability" (Workers' Compensation Law § 11). Since there is no dispute that the plaintiff sustained an injury to his brain caused by an external physical force, the issue at bar is whether this injury resulted in permanent total disability.

There is no definition of permanent total disability in Workers' Compensation Law § 11, and we are discouraged from consulting Workers' Compensation Law § 15 (1) which describes a "permanent total disability" for compensation purposes. This discouragement stems from the disparate legislative purposes of Workers' Compensation Law §§ 11 and 15 (see *Castro v United Container Mach. Group,* 96 NY2d 398, 401 n 2 [2001]). Therefore, we must rely on illustrative cases.

In *Meis v ELO Org.* (97 NY2d 714, 716 [2002]), while not involving a brain injury, the court rejected as a grave injury, in the category of a permanent and total loss of use of a hand, the loss of a thumb. It applied the lesson from *Castro v United Container Mach. Group* (*supra* at 401), that "[i]njuries qualifying as grave are narrowly defined." With this mandate of narrow definition we turn to the brain injury cases.

In *Way v Grantling* (289 AD2d 790, 792 [2001]), the Appellate Division, Third Department, determined that permanent total disability related to the employability of the injured plaintiff and not to his or her ability to engage in the daily activities of life, including self-care, and to function in a modern society (*but see Tassone v Mid-Val. Oil Co.,* 291 AD2d 623, 624 [2002]; *cf. Barbieri v Mount Sinai Hosp.,* 264 AD2d 1, 6-7 [2000]).

In contrast, the cases in this department focus not on the re-

employability of the injured plaintiff, but rather, on the ability to engage in day-to-day functions. Our most recent case is *Schuler v Kings Plaza Shopping Ctr. & Mar.* (294 AD2d 556 [2002]). The record in that case shows that the plaintiff suffered a comminuted left temporal, parietal, and occipital skull fracture requiring a craniectomy and a later cranioplasty to repair a skull defect. He suffered impaired memory, concentration, and calculation skill, and severely impaired problem-solving skill. He had anger management problems and chronic insomnia. The examining physician opined that Schuler could not return to work but could manage only a limited social agenda, could dress and feed himself and could perform simple arithmetic calculations. This Court held as a matter of law that Schuler had not sustained a grave injury (*see Schuler v Kings Plaza Shopping Ctr & Mar., supra* at 558).

In another recent case, we granted summary judgment dismissing the third-party complaint for lack of a grave injury. The plaintiff sustained a brain injury causing "cognitive defects, mild expressive language deficits and impaired problem solving ability" (*Dunn v Smithtown Bancorp,* 286 AD2d 701, 702 [2001]). Barely two months earlier we decided in *Fitzpatrick v Chase Manhattan Bank* (285 AD2d 487 [2001]), that the plaintiff's brain injury was not a grave injury under Workers' Compensation Law § 11. The record in Fitzpatrick reveals that the plaintiff employee fractured his skull and suffered cognitive changes prohibiting him from working in his occupation as a bricklayer. He had difficulty with tasks requiring attention and planning. He was, however, able to dress, shower, and feed himself and to drive a vehicle (*see also Angwin v SRF Partnership,* 285 AD2d 568 [2001] [the plaintiff was struck on the head by a magnetic lock; she sustained a concussion and exacerbation of a herniated cervical disc]).

As serious as are the injuries of the plaintiff at bar, they are no more serious than those of the injured plaintiffs presented in the most recent precedents of our own Court. The conclusion is inescapable that the injuries here do not qualify as grave under Workers' Compensation Law § 11.

Accordingly, the Supreme Court erred in denying the third-party defendant's motion pursuant to CPLR 4401 for judgment as a matter of law dismissing the third-party complaint. Feuerstein, J.P., S. Miller, McGinity and Crane, JJ., concur.