[821 NE2d 530, 788 NYS2d 292]

ALDO RUBEIS et al., Plaintiffs, v THE AQUA CLUB, INC., Doing Business as V.I.P. TENNIS & BEACH CLUB, LTD., et al., Defendants. THE AQUA CLUB, INC., Third-Party Plaintiff-Appellant, v VENEZIA IRON WORKS, INC., Third-Party Defendant-Respondent.

JORGE LARGO-CHICAIZA, Plaintiff, v WESTCHESTER SCAFFOLD EQUIPMENT CORP. et al., Defendants. VERMONT SLATE ROOF Co. et al., Third-Party Plaintiffs, and PETER B. McCAFFREY et al., Third-Party Plaintiffs-Appellants, v SALVATORE SANZO, Third-Party Defendant-Respondent.

THOMAS KNAUER, Respondent, v DIANE L. ANDERSON, as Executrix of WILLIAM F. ANDERSON, SR., et al., Defendants. DIANE L. ANDERSON, as Executrix of WILLIAM F. ANDERSON, SR., et al., Third-Party Plaintiffs, and B.T.S. SERVICES, INC., Third-Party Plaintiff-Respondent, v RONALD A. KNAUER, JR., Doing Business as KNAUER ELECTRIC, Third-Party Defendant-Appellant.

Argued October 12, 2004; decided November 23, 2004

**POINTS OF COUNSEL**

*Shaub, Ahmuty, Citrin & Spratt, LLP,* Lake Success (*Steven J. Ahmuty* and *Christopher Simone* of counsel), for Aqua Club, Inc., defendant and third-party plaintiff-appellant in the first above-entitled action. I. Under the acquired brain injury category of "grave injury" in Workers' Compensation Law § 11, the

requirement of "permanent total disability" should be determined in reference to the injured worker's employability, not the ability to engage in day-to-day functions. (*Castro v United Container Mach. Group*, 96 NY2d 398; *Meis v ELO Org.*, 97 NY2d 714; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Way v Grantling*, 289 AD2d 790; *Knauer v Anderson*, 2 AD3d 1314; *Schuler v Kings Plaza Shopping Ctr. & Mar.*, 294 AD2d 556; *Dunn v Smithtown Bancorp*, 286 AD2d 701; *Fitzpatrick v Chase Manhattan Bank*, 285 AD2d 487; *Olszewki v Park Terrace Gardens*, 306 AD2d 128; *We're Assoc. Co. v Cohen, Stracher & Bloom*, 65 NY2d 148.) II. In the event this Court concludes that "employability" is the controlling standard, then in light of the jury's verdict finding that plaintiff sustained a "grave injury" under Workers' Compensation Law § 11, Aqua Club is entitled to reversal of the Appellate Division's order and reinstatement of the indemnification judgment in its favor. (*Alexander v Eldred*, 63 NY2d 460.)

*Michael J. Hutter,* Albany, for third-party defendant-respondent in the first above-entitled action. I. The requirement of an injured worker's "permanent total disability" under the acquired brain injury category of "grave injury" in Workers' Compensation Law § 11 must be determined in reference to the worker's ability to engage in life's daily activities, and where it is undisputed, as here, that the competent medical proof shows the employee has some ability, physical and mental, albeit on a diminished level, as compared to the worker's preaccident abilities, there is no "permanent total disability" and thus no "grave injury." (*Westchester Light. Co. v Westchester County Small Estates Corp.*, 278 NY 175; *Dole v Dow Chem. Co.*, 30 NY2d 143; *Ibarra v Equipment Control*, 268 AD2d 13; *Kelly v Long Is. Light. Co.*, 31 NY2d 25; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Castro v United Container Mach. Group*, 96 NY2d 398; *Meis v ELO Org.*, 97 NY2d 714; *Patrolmen's Benevolent Assn. v City of New York*, 41 NY2d 205; *People v White*, 73 NY2d 468; *Council of City of N.Y. v Giuliani*, 93 NY2d 60.) II. Assuming arguendo that this Court concludes that "permanent total disability" is to be determined solely in reference to plaintiff's ability to engage in employment, a new trial on the issue of whether plaintiff sustained a "permanent total disability" under that employability standard must be ordered.

*Fishman, Dorfman & Callahan,* Pearl River (*Jayne F. Monahan* of counsel), for third-party plaintiffs-appellants in the second above-entitled action. I. There are conflicts in the rul-

ings of the Appellate Division Departments on the interpretation of permanent total disability. (*Schuler v Kings Plaza Shopping Ctr. & Mar.*, 294 AD2d 556; *Dunn v Smithtown Bancorp*, 286 AD2d 701; *Fitzpatrick v Chase Manhattan Bank*, 285 AD2d 487; *Way v Grantling*, 289 AD2d 790; *Knauer v Anderson*, 2 AD3d 1314.) II. The Second Department's definition of permanent total disability is too narrow. (*Castro v United Container Mach. Group*, 96 NY2d 398.) III. Plaintiff Jorge Largo-Chicaiza suffered a grave injury utilizing the definitions as set forth by the Third and Fourth Departments.

*Baxter & Smith, P.C.*, White Plains (*Robert C. Baxter* and *Sim R. Shapiro* of counsel), for third-party defendant-respondent in the second above-entitled action. I. The Appellate Division, Second Department, has correctly defined the term "permanent total disability." (*Castro v United Container Mach. Group*, 96 NY2d 398; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Aguirre v Castle Am. Constr.*, 307 AD2d 901; *Trimble v Hawker Dayton Corp.*, 307 AD2d 452; *Way v Grantling*, 289 AD2d 790; *Tassone v Mid-Valley Oil Co.*, 291 AD2d 623; *Knauer v Anderson*, 2 AD3d 1314; *Schuler v Kings Plaza Shopping Ctr. & Mar.*, 294 AD2d 556; *Dunn v Smithtown Bancorp*, 286 AD2d 701; *Rubeis v Aqua Club*, 305 AD2d 656.) II. Under the Appellate Division, Second Department's interpretation of "permanent total disability," plaintiff, Jorge Largo-Chicaiza, did not sustain a "grave injury" pursuant to Workers' Compensation Law § 11. (*Rubeis v Aqua Club*, 305 AD2d 656; *Schuler v Kings Plaza Shopping Ctr. & Mar.*, 294 AD2d 556; *Dunn v Smithtown Bancorp*, 286 AD2d 701; *Barbieri v Mount Sinai Hosp.*, 264 AD2d 1.) III. Even using the definition of the Appellate Division, Third Department, in *Way v Grantling* (289 AD2d 790 [2001]) in which it held that "permanent total disability" relates to a plaintiff's employability, Jorge Largo-Chicaiza has not sustained a "grave injury."

*Michael J. Hutter*, Albany, and *Underberg & Kessler, LLP*, Buffalo (*J. David Sampson* of counsel), for third-party defendant-appellant in the third above-entitled action. I. The requirement of an injured worker's "permanent total disability" under the acquired brain injury category of "grave injury" in Workers' Compensation Law § 11 must be determined in reference to the worker's ability to engage in life's daily activities, and where it is undisputed, as here, that the competent medical proof shows the employee has some ability, physical and mental, albeit on a diminished level as compared to the worker's preaccident abili-

ties, there is no "permanent total disability" and thus no "grave injury." (*Westchester Light. Co. v Westchester County Small Estates Corp.*, 278 NY 175; *Dole v Dow Chem. Co.*, 30 NY2d 143; *Ibarra v Equipment Control*, 268 AD2d 13; *Kelly v Long Is. Light. Co.*, 31 NY2d 25; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Castro v United Container Mach. Group*, 96 NY2d 398; *Meis v ELO Org.*, 97 NY2d 714; *Patrolmen's Benevolent Assn. v City of New York*, 41 NY2d 205; *People v White*, 73 NY2d 468; *Council of City of N.Y. v Giuliani*, 93 NY2d 60.) II. Assuming arguendo that this Court concludes that "permanent total disability" is to be determined solely in reference to plaintiff's ability to engage in employment, a new trial on the issue of whether plaintiff sustained a "permanent total disability" under that employability standard must be ordered.

*Connors & Vilardo, LLP,* Buffalo (*John T. Loss* and *Terrence M. Connors* of counsel), for respondent in the third above-entitled action. I. "Permanent total disability" must encompass an injury that results in the complete and permanent inability to be employed in any capacity whatsoever. (*Way v Grantling,* 289 AD2d 790; *Rubeis v Aqua Club,* 305 AD2d 656; *Largo-Chicaiza v Westchester Scaffold Equip. Corp.,* 5 AD3d 355; *Castro v United Container Mach. Group,* 96 NY2d 398; *Matter of Schurick v Bayer Co.,* 272 NY 217.) II. Knauer Electric's proposed definition is radical, unprecedented, and contrary to what the Legislature intended. (*Way v Grantling,* 289 AD2d 790; *Matter of Schurick v Bayer Co.,* 272 NY 217; *Castro v United Container Mach. Group,* 96 NY2d 389.)

*Gibson, McAskill & Crosby, LLP,* Buffalo (*Norman B. Viti, Jr., Victor Alan Oliveri* and *Timothy J. Graber* of counsel), for third-party plaintiff-respondent in the third above-entitled action. The Appellate Division, Fourth Department, correctly held that the plain meaning of "permanent total disability" as used in section 11 of the Workers' Compensation Law in reference to "an acquired injury to the brain" relates to a plaintiff's permanent total disability from employment and not to his or her ability to otherwise care for himself or herself and function in a modern society.

### OPINION OF THE COURT

Chief Judge KAYE.

An employer's liability for an on-the-job injury is generally limited to workers' compensation benefits, but when an em-

ployee suffers a "grave injury" the employer also may be liable to third parties for indemnification or contribution. In the three actions before us, we are again asked to define the scope of an enumerated "grave injury" in Workers' Compensation Law § 11—this time "an acquired injury to the brain caused by an external physical force resulting in permanent total disability." We hold that a brain injury results in "permanent total disability" under section 11 when the evidence establishes that the injured worker is no longer employable in any capacity.

### Rubeis v Aqua Club, Inc.

Aldo Rubeis, an ironworker, sustained a brain injury when he fell approximately 19 feet from a ladder while installing a steel cupola at the Aqua Club. At the time of the accident, Rubeis was employed by Venezia Iron Works, Inc. Rubeis commenced a personal injury action against Aqua Club, which then impleaded Venezia alleging a cause of action for common-law indemnification and contribution. Aqua Club claimed that plaintiff sustained a grave injury under Workers' Compensation Law § 11 and thus plaintiff's employer was liable.

At the close of the liability phase of trial, the court granted Aqua Club judgment on its claim against Venezia, subject to resolution of the question whether plaintiff sustained a grave injury, which it submitted to the jury. The court instructed the jury that

> "[i]n order to prove a grave injury . . . the medical evidence must indicate that . . . plaintiff is unable to return to any employment. You may consider plaintiff's ability to obtain other employment and should also consider his ability to perform the usual and customary tasks of ordinary day-to-day living, such as whether he is physically independent and ambulatory, in determining whether or not plaintiff suffered a grave injury. . . ."

The jury found that the plaintiff sustained a grave injury and awarded him approximately $3.2 million in damages. The trial court denied Venezia's motion to set aside the verdict, but the Appellate Division, Second Department, reversed and granted the motion. Relying on Second Department case law holding that brain injury does not result in permanent total disability where the employee is able to perform day-to-day functions, the Appellate Division concluded that plaintiff had not suffered a grave injury under Workers' Compensation Law § 11.

### Largo-Chicaiza v Westchester Scaffold Equipment Corp.

Jorge Largo-Chicaiza, a day-laborer, sustained a brain injury when he fell from the roof of a six-story house owned by Peter and Catherine McCaffrey while removing shingles. At the time of the accident, he was employed by the general contractor, Salvatore Sanzo. Largo-Chicaiza brought a personal injury action against the McCaffreys, Sanzo and the roofing subcontractors. In their answers, defendants each sought dismissal of the complaint and, in the alternative, cross-claimed for indemnification and contribution against Sanzo pursuant to Workers' Compensation Law § 11.

Sanzo sought summary judgment against plaintiff and dismissal of all cross claims against him on the ground that he was plaintiff's employer, and plaintiff's sole recovery against him were therefore workers' compensation benefits. The trial court granted Sanzo's motion for summary judgment as against plaintiff, but denied his motion seeking to prohibit impleader actions against him and converted defendants' cross claims into third-party actions against Sanzo. Citing *Way v Grantling* (289 AD2d 790, 792 [3d Dept 2001]) for the proposition that permanent total disability relates to the injured party's employability, not ability to function in society, the trial court concluded that the evidence raised material questions of fact. The Appellate Division, Second Department, reversed and, citing *Rubeis* (305 AD2d 656 [2003]), concluded that plaintiff's injuries were not a grave injury under Workers' Compensation Law § 11.

### Knauer v Anderson

Thomas Knauer, an electrician employed by Knauer Electric, sustained a brain injury when he fell 17 feet from a ladder and crashed headfirst onto a gravel floor. Knauer commenced a personal injury action against the general contractor and the property owner. The defendants then brought a third-party action against plaintiff's employer for indemnification. The trial court denied the employer's motion for summary judgment, finding a triable issue of fact regarding whether plaintiff sustained a grave injury.

After trial, the court charged the jury that permanent total disability means permanent total disability from employment and does not require that plaintiff lack all capacity to perform personal or household activities. The jury found in plaintiff's favor, awarding him $11 million, and the Appellate Division,

Fourth Department, affirmed, relying on *Way*. The Court reasoned, "evidence that a plaintiff has suffered the specified injury to the brain resulting in permanent total disability relates to his or her permanent total disability from employment, not to his or her ability to otherwise care for himself or herself and function in a modern society" (2 AD3d 1314, 1315 [4th Dept 2003] [internal quotation marks omitted]).

We granted leave to address this split among Departments on the meaning of "permanent total disability" under Workers' Compensation Law § 11.

### Analysis

Workers' Compensation Law § 11 provides:

> "An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a 'grave injury' which shall mean only one or more of the following: death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability."

Section 11 was enacted in 1996 as part of a comprehensive reform intended to reduce costs for employers while also protecting the interests of injured workers (Omnibus Workers' Compensation Reform Act of 1996, L 1996, ch 635; Governor's Approval Mem, Bill Jacket, L 1996, ch 635, at 54, 1996 NY Legis Ann, at 459). Before that, New York State stood alone in freely allowing a defendant in a personal injury action brought by an employee injured on the job to seek indemnification or contribution from the employer. Central to the reform was immunity from tort liability for employers who provide workers' compensation coverage by exposing employers to third-party liability "only in cases involving *narrowly defined* 'grave' injuries" (Governor's Approval Mem, Bill Jacket at 55, 1996 NY Legis Ann, at 460). The injuries enumerated as grave were

"deliberately both narrowly and completely described. The list is exhaustive, not illustrative: it is not intended to be extended absent further legislative action" (*id.*).

This legislative directive has consistently guided our determination as to whether a particular injury is a grave injury within the statute. In *Castro v United Container Mach. Group, Inc.* (96 NY2d 398 [2001]), for example, we held that the term " 'loss of multiple fingers' cannot sensibly be read to mean partial loss of multiple fingers" (*id.* at 401). The word finger in the statute means the whole finger, not just its tip. And in *Meis v ELO Org., LLC* (97 NY2d 714, 716 [2002]), we concluded that loss of a thumb is not "permanent and total loss of use" of a hand, and thus not a grave injury.

In *Castro* and *Meis*, the words of the statute alone answered the question before us. Partial loss of multiple fingers, and loss of a thumb, simply do not fit the clear literal terms of the statute. The statutory words "an acquired injury to the brain caused by an external physical force resulting in permanent total disability," however, do not alone answer the question whether a particular injury is a grave injury. That phrase *requires* interpretation.

The definition of "permanent total disability" within section 11 has, moreover, divided the Appellate Divisions. The Third and Fourth Departments conclude that the permanent total disability envisioned by the section "relates to the injured party's employability and not his or her ability to otherwise care for himself or herself and function in a modern society" (*Way v Grantling*, 289 AD2d 790, 792 [3d Dept 2001]; *Knauer v Anderson*, 2 AD3d 1314 [4th Dept 2003]). In *Way*, the Third Department found a material issue of fact as to permanent total disability when evidence suggested that the employee's postconcussive syndrome permanently disabled him from competitive employment in even the most menial tasks, and where he had been awarded Social Security disability benefits. When defining "permanent total disability" the Second Department, by contrast, has focused on the injured party's ability to engage in day-to-day functions (*see Schuler v Kings Plaza Shopping Ctr. & Mar., Inc.*, 294 AD2d 556, 559 [2d Dept 2002] [no grave injury where injured plaintiff managed a limited social agenda and was able to, among other things, dress and feed himself and handle simple arithmetic]).

These appeals in fact place before us two possible definitions of permanent total disability: the Second Department's stan-

dard essentially requiring a vegetative state, and the Third and Fourth Departments' standard essentially requiring unemployability. In choosing between these alternatives, our guiding principle is, of course, to implement the intent of the Legislature—in this case to narrow tort exposure for employers while also protecting the interests of injured workers—by considering both the language used and objects to be accomplished. While both definitions are plausible, the second, in our view, better fits section 11 and better effectuates the legislative purposes.

First, we consider the choices within the context of section 11 itself. The Legislature in section 11 has itself defined a grave injury to include "loss of multiple fingers," "loss of multiple toes," "loss of nose," "loss of ear," "permanent and severe facial disfigurement" and "loss of an index finger." None of those enumerated grave injuries has the effect of preventing an employee from performing daily life activities. Limitation of permanent total disability to a vegetative state thus is too harsh a test, out of step with the balance of the section.

Next, we consider the two alternatives within the larger context of the Workers' Compensation Law, where the customary definition of "disability" relates to employment.* The Workers' Compensation Law deals with employment benefits, and the term "disability" generally refers to inability to work. Workers' Compensation Law § 201 (9) (A) and Department of Labor Rules and Regulations (12 NYCRR) § 363.1, for example, relate disability to inability to perform duties of employment. And section 37 (1), which refers to occupational diseases, states, " '[d]isability' means the state of being disabled from earning full wages at the work at which the employee was last employed." The Workers' Compensation Law is about workers and their work.

Finally, we make clear that the test we adopt for permanent total disability under section 11 is one of unemployability *in any capacity*. "In any capacity" is in keeping with legislative intent and sets a more objectively ascertainable test than equivalent, or competitive, employment.

---

\* "[P]ermanent total disability" is defined in section 15 (1)—which authorizes schedule compensation awards based on a worker's wages at the time of the accident—to mean, "[l]oss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any two thereof shall, in the absence of conclusive proof to the contrary, constitute permanent total disability." The purpose there is, however, different from the section before us (*see Castro*, 96 NY2d 398, 401 n 2).

Accordingly, in *Rubeis v Aqua Club, Inc.*, the order of the Appellate Division should be reversed, with costs, and the order of Supreme Court, Rockland County, reinstated; in *Largo-Chicaiza v Westchester Scaffold Equipment Corp.*, the order of the Appellate Division should be reversed, with costs, and the third-party complaint reinstated; and in *Knauer v Anderson*, the judgment appealed from and order of the Appellate Division brought up for review should be affirmed, with costs.

READ, J. (dissenting). As between the two plausible definitions for a "permanent total disability" with respect to an acquired brain injury under Workers' Compensation Law § 11, the narrower one is, in my view, more faithful to legislative intent. Accordingly, I dissent, and would affirm the orders in *Rubeis* and *Largo-Chicaiza* and reverse the order in *Knauer*.

The 1996 amendment of Workers' Compensation Law § 11, which created the "grave injury" exception for indemnification or contribution claims against an injured worker's employer (L 1996, ch 635, § 2), was heavily negotiated. The particular compromises struck to develop the list of grave injuries are unknowable and, in some cases, the results seem downright peculiar. Why, for example, is the loss of an index finger a grave injury while the loss of a thumb is not? We clearly know, however, what the Legislature intended, which was to curtail third-party actions against the employer of an injured worker sharply and to do so, in large part, by designating grave injuries that were "deliberately both *narrowly and completely described*," "exhaustive, not illustrative" and "not intended to be extended further absent legislative action" (*Castro v United Container Mach. Group, Inc.*, 96 NY2d 398, 402 [2001], quoting Governor's Approval Mem, Bill Jacket, L 1996, ch 635, at 55, 1996 NY Legis Ann, at 460).

Despite the Legislature's best efforts to insulate the grave injuries in section 11 from judicial interpretation (and the perceived attendant risk of judicial expansion), the phrase "an acquired injury to the brain caused by an external physical force resulting in permanent total disability" is not self-explanatory. In adopting a standard for permanent total disability essentially requiring unemployability rather than the competing and narrower standard, the inability to perform the usual activities of daily living, the majority deploys tools of statutory interpretation that are tried-and-true, but unsuited to the particular task. Specifically, since many (but certainly not all) of the grave injuries listed in section 11 do not prevent an

employee from performing daily life activities, the majority reasons that "[l]imitation of permanent total disability to a vegetative state . . . is too harsh a test, out of step with the balance of the section" (majority op at 417). This kind of text-based analysis ill-fits section 11 since the list of grave injuries is, as previously noted, the singular product of legislative compromise, and is exhaustive, not illustrative. It is difficult to reason by analogy to the other grave injuries on the list when these are as various as the loss of a finger and quadriplegia.

The majority further observes that the word "disability" generally refers to employment within the "larger context" of the Workers' Compensation Law (majority op at 417). But these employment-related definitions of "disability" appear in provisions of the statute relating to payment of compensation (*see e.g.* Workers' Compensation Law § 15 [1]; §§ 37, 201 [9]). These provisions bear no relationship to section 11's very different and overriding goal—to safeguard employers from impleader except in rare circumstances.*

When the Legislature adopted section 11, it intended to retrench an employer's exposure to costly third-party actions, and thereby reduce the employer's insurance premiums and out-of-pocket payments. The Legislature did this by barring third-party actions against employers except in the limited circumstances of a grave injury. As has been pointed out, the 1996 amendment of section 11 to carry out this goal "[was] at best indifferent to the employee, its aim being to protect the employer" (*Under Workers' Compensation Reform Act, Loss of Thumb is Held to Mean Loss of Use of Hand, Supporting Impleader of Employer*, 109 Siegel's Practice Review 1 [May 2001]). In light of this goal and the concomitant legislative intent for us to exercise our interpretive function particularly sparingly and narrowly with respect to grave injuries under section 11, I would adopt the more restrictive of the two plausible,

---

* In fact, the Legislature seems to have borrowed section 11's definition of an acquired brain injury from Public Health Law § 2741, not from any other provision in the Workers' Compensation Law. In relevant part, section 2741 defines "traumatic brain injury" to mean *"an acquired injury to the brain caused by an external physical force resulting in total* or partial *disability* or impairment" (emphasis added). The Legislature considerably limited this definition in section 11 by eliminating the words "partial" and "impairment" and adding the word "permanent" to describe, along with "total," the profound extent of disability required to qualify as a grave injury. Nothing in section 2741 or article 27-CC of the Public Health Law relates the word "disability" to the concept of employability.

and equally workable, definitions for a "permanent total disability" developed by the Appellate Divisions; namely, that a "permanent total disability" with respect to an acquired brain injury means the inability to perform the usual activities of daily living, essentially requiring a vegetative state.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and R.S. SMITH concur with Chief Judge KAYE; Judge READ dissents and votes to affirm in a separate opinion.

In *Rubeis v Aqua Club, Inc.:* Order reversed, etc.

In *Largo-Chicaiza v Westchester Scaffold Equipment Corp.:* Order reversed, etc.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and R.S. SMITH concur with Chief Judge KAYE; Judge READ dissents and votes to reverse in a separate opinion.

In *Knauer v Anderson:* Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.