[833 NYS2d 642]

Wilfredo Alexis Castillo, Respondent, v 711 Group, Inc., Defendant and Third-Party Plaintiff-Respondent. 3-D Laboratory, Inc., Third-Party Defendant-Appellant.

Second Department, April 17, 2007

### APPEARANCES OF COUNSEL

*Baxter & Smith, P.C.*, Jericho (*Sim R. Shapiro* of counsel), for third-party defendant-appellant.

*Jones Hirsch Connors & Bull, P.C.*, New York City (*Miller & Associates, P.C.* [*Scott E. Miller* and *Mark D. Wellman*] of counsel), for third-party plaintiff-respondent.

### OPINION OF THE COURT

GOLDSTEIN, J.

At issue here is whether the plaintiff's injury constituted a grave injury as defined in Workers' Compensation Law § 11 under the category "loss of an index finger."

In August 2002, the plaintiff "sustained a traumatic amputation of his left index finger" while using a table saw at a construction site located at premises owned by the defendant 711 Group, Inc., a New York corporation (hereinafter 711 Group). In this action by the plaintiff against 711 Group to recover damages for his personal injuries, 711 Group commenced a third-party action against the plaintiff's employer, 3-D Laboratory, Inc., for common-law indemnification. After issue was joined in the third-party action, the third-party defendant moved for summary judgment alleging that the plaintiff did not suffer a "grave injury" pursuant to Workers' Compensation Law § 11.

In support of its motion for summary judgment, the third-party defendant submitted the plaintiff's medical records which stated that the amputation extended "through the proximal interphalangeal joint." The closest remaining joint is the metacarpophalangeal joint in the hand. The wound healed, leaving a "painful amputation stump" requiring two corrective surgeries. In the first surgery, the digital nerve was allowed to retract into the palm of the hand and nerve tissue was removed. The second surgery involved dissection and transection of nerve tissue.

The plaintiff's unrefuted deposition testimony was that he asked doctors treating his injury to reattach the finger, but the doctors refused on the ground that where he "had been cut, there was a lot of crossing of nerves," and if the finger was reattached "it was going to be stiff, straight and without any feeling." In the opinion of a physician retained by the defendant third-party plaintiff, the plaintiff suffered "100% loss of function of [the plaintiff's] left index finger."

In the order appealed from, the third-party defendant's motion for summary judgment was "denied in all respects," citing

the opinion of 711 Group's physician that the plaintiff suffered a 100% loss of function of the left index finger.

The enumerated grave injury in issue is "loss of an index finger" (Workers' Compensation Law § 11). Whether the plaintiff suffered a "loss of use" of his index finger is not one of the statutory criteria (*see Castro v United Container Mach. Group*, 96 NY2d 398, 401 [2001]).

The third-party defendant contends that since the plaintiff retains a "painful left index finger amputation stump" which required two surgeries to desensitize, he "sustained a partial, rather than a full" loss of index finger, citing *Castro v United Container Mach. Group* (*supra*). We disagree.

By chapter 635 of the Laws of 1996, Workers' Compensation Law § 11 was amended to limit a tortfeasor's right to common-law indemnity or contribution against the plaintiff's employer in a personal injury action to cases where the "the plaintiff seeks relief for a statutorily denominated and enumerated 'grave injury' " (Governor's Mem approving L 1996, ch 635, 1996 NY Legis Ann, at 460). The enumerated grave injuries were "deliberately both narrowly and completely described. The list is exhaustive, not illustrative" (*id.*).

The Court of Appeals stated that that statutory language should be "sensibly" read "without resort to forced or unnatural interpretations" (*Castro v United Container Mach. Group, supra* at 401). Further, in interpreting the statutory language, the "guiding principle is, of course, to implement the intent of the Legislature—in this case to narrow tort exposure for employers while also protecting the interest of injured workers—by considering both the language used and objects to be accomplished" (*Rubeis v Aqua Club, Inc.*, 3 NY3d 408, 417 [2004]).

Unfortunately, the statutory language contains no definitional provisions. The definitions set forth in Workers' Compensation Law § 15 are not applicable (*see Castro v United Container Mach. Group, supra* at 401 n 2).

The index finger consists of three phalanges: the proximal phalanx closest to the hand and the middle and distal phalanges. The joint between the proximal and middle phalanges is called the proximal interphalangeal or "PIP" joint, and the joint between the middle and distal phalanges is called the distal interphalangeal or "DIP" joint (*see* Stedman's Medical Dictionary 1176 [25th ed 1990]).

Consistent with the analysis that the words should be afforded their plain meaning, the Court of Appeals found that "[a]s a matter of standard English usage, the word "finger" means the whole finger, not just its tip" (*Castro v United Container Mach. Group, supra* at 401; *see Meis v ELO Org.*, 97 NY2d 714 [2002]). However, the question here is whether the loss of both interphalangeal joints, including the PIP joint, leaving a "painful amputation stump" constitutes loss of the finger.

This Court has held that loss of half the index finger is insufficient to establish "grave injury" (*see Blackburn v Wysong & Miles Co.*, 11 AD3d 421 [2004]). In that case, the plaintiff's index finger was amputated at the base of the middle phalanx, leaving him with a proximal interphalangeal joint. Similarly, in *Mentesana v Bernard Janowitz Constr. Corp.* (36 AD3d 769 [2007]), this Court held that a partial amputation of the index finger to the level of the proximal interphalangeal joint did not constitute loss of the index finger.

In the instant case, the plaintiff has lost both interphalangeal joints of the index finger. In view of the foregoing, it is our determination that the plaintiff has suffered the loss of his index finger.

This interpretation is consistent with definitions in other jurisdictions which define loss of finger strictly as the loss of more than two phalanges (*see* Ala Code § 25-5-57 [a] [3] [a] [7]; Kan Stat Ann § 44-510d [a] [6]; Ohio Rev Code Ann § 4123.57 [B]; La Rev Stat Ann § 23:1221 [4] [l]), as distinguished from the more liberal definition of loss of finger as loss of more than one phalanx (*see e.g.* 33 USC § 908 [c] [14]; Workers' Compensation Law § 15 [3] [n]). The third-party defendant's contention that the "painful amputation stump" that remains precludes a finding that the plaintiff has suffered a loss of his index finger constitutes a forced and unnatural interpretation of the statutory language. The existence of the "painful amputation stump" underscores the seriousness of the plaintiff's disability (*see Thibodeaux v W. Horace Williams Co.*, 14 So 2d 320 [La 1943] [loss of index finger leaving "painful amputation stump" constitutes total disability]).

Thus, the order is affirmed, and upon searching the record, the plaintiff and 711 Group are awarded partial summary judgment on the issue of whether the plaintiff suffered a grave injury.

CRANE, J.P., LIFSON and CARNI, JJ., concur.

Ordered that the order is affirmed, with costs, and upon searching the record, the plaintiff and the defendant third-party plaintiff are awarded partial summary judgment on the issue of whether the plaintiff suffered a grave injury.