[909 NYS2d 802]

JOSEPH MIRANDA III, an Incapacitated Person, by His Guardians, JOSEPH MIRANDA JR. et al., Appellant-Respondent, v NORSTAR BUILDING CORPORATION et al., Defendants and Third-Party Plaintiffs-Appellants-Respondents, and PINNACLE ROOFING, INC., Defendant and Third-Party Plaintiff-Respondent-Appellant, et al., Defendants. JOSEPH RUSSO, Doing Business as NORTHERN CONSTRUCTION TECHNOLOGIES, Third-Party Defendant-Respondent-Appellant.

Third Department, October 28, 2010

44

## APPEARANCES OF COUNSEL

*Pentkowski, Pastore & Freestone, Clifton Park* (*David H. Pentkowski* of counsel), for appellant-respondent.

*Roemer, Wallens, Gold & Mineaux*, Albany (*Matthew J. Kelly* of counsel), for defendants and third-party plaintiffs-appellants-respondents.

*Conway & Kirby, L.L.P.*, Latham (*Denis R. Hurley Jr.* of counsel), for defendant and third-party plaintiff-respondent-appellant.

*Burke, Scolamiero, Mortati & Hurd*, Hudson (*Melissa J. Smallacombe* of counsel), for third-party defendant-respondent-appellant.

## OPINION OF THE COURT

GARRY, J.

Plaintiff sustained a traumatic brain injury when he fell approximately 30 feet from a roof while working on a construction project in the City of Albany. Plaintiff's parents, acting as his guardians pursuant to Mental Hygiene Law article 81, commenced this action on his behalf alleging common-law negligence and violations of Labor Law §§ 200, 240 (1) and § 241 (6). Defendants are: the owners, Swan Street Homes, LLC and Swan Street Housing Development Fund Corporation; the general contractor, Norstar Building Corporation (hereinafter NBC); the project manager, Norstar Development USA, L.P. (hereinafter NDLP); Albany Housing Authority, which oversaw the project; and the roofing subcontractor, Pinnacle Roofing, Inc. NBC, NDLP and the Albany Housing Authority (hereinafter collectively referred to as the Norstar defendants) and Pinnacle then commenced a third-party action against plaintiff's employer, John Russo.

Plaintiff moved for partial summary judgment on the issue of liability pursuant to Labor Law § 240 (1). The Norstar defendants moved for summary judgment on their contractual and common-law indemnification claims against Pinnacle and Russo. Pinnacle moved for summary judgment on its third-party claims for common-law and contractual indemnification, and Russo cross-moved for summary judgment dismissing all third-party common-law indemnification claims and the Norstar defendants' contractual indemnification claim. Supreme Court denied all of the requested relief, and all moving parties appealed. Plaintiff, the Norstar defendants, and Pinnacle also sought leave to reargue. Supreme Court granted plaintiff's reargument motion and awarded him partial summary judgment on the issue of liability under Labor Law § 240 (1). The Norstar defendants, Pinnacle, and Russo appeal from that order.

First addressing the challenge to the award of summary judgment to plaintiff on his Labor Law § 240 (1) claim, the parties agree that the only fall protection method in use at plaintiff's rooftop job site was a safety monitoring system, alleged to be widely accepted in the construction industry, in which a designated safety monitor—here, Russo—was assigned the task of watching other workers and warning them when they approached a roof edge or other fall hazard. At the time of his fall, plaintiff was installing a roof membrane, a task that necessarily required him to work within inches of the edge of the roof. Russo testified that when he saw plaintiff and a coworker approaching the rim, he warned them to "watch the edge." Seconds later, he saw plaintiff slip off the roof. Supreme Court concluded, upon reargument, that this monitoring system did not constitute a safety device within the meaning of Labor Law § 240 (1) and that the failure to provide such a device was the proximate cause of plaintiff's accident. The Norstar defendants, Pinnacle, and Russo contend that safety monitoring systems are approved by the Occupational Safety and Health Administration (hereinafter OSHA), that such a system was the only appropriate fall protection for the small, low-slope roof where plaintiff was working, and that the system does constitute a safety device within the meaning of the statute.

Labor Law § 240 (1) makes contractors and owners strictly liable for failing to provide construction workers who are exposed to elevation-related hazards with "scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed." The statute is to be "liberally construed to effect its purpose of providing protection to workers" (*Gilbert v Albany Med. Ctr.*, 9 AD3d 643, 644 [2004]). In determining whether the safety monitoring system constitutes a "device" within the meaning of this provision, "[o]ur primary consideration . . . is to 'ascertain and give effect to the intention of the Legislature' " (*Connery v County of Albany*, 73 AD3d 198, 201 [2010], *lv denied* 15 NY3d 702 [2010], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a]). " 'The legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction' " (*Matter of Excellus Health Plan v Serio*, 303 AD2d 864, 867 [2003], *affd* 2 NY3d 166 [2004], quoting McKinney's Cons Laws of NY,

Book 1, Statutes § 94). Where, as here, the language to be construed is a general catchall term that follows a list of more specific words, "the precept of ejusdem generis as a construction guide is appropriate—that is, words constituting general language . . . are not to be given the most expansive meaning possible, but are held to apply only to the same general kind or class as those specifically mentioned" (*Team Mktg. USA Corp. v Power Pact, LLC*, 41 AD3d 939, 942-943 [2007] [internal quotation marks and citations omitted]; *see Uribe v Merchants Bank of N.Y.*, 91 NY2d 336, 340 [1998]).

■ Applying these principles, we note that "scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, [and] ropes" are tangible objects that protect workers from elevation-related hazards by providing physical support (Labor Law § 240 [1]). By contrast, a safety monitoring system does not provide any physical support or protection.[1] As Russo testified, "I can't prevent someone from slipping off the roof." We find that, as a matter of construction, a person acting as a safety monitor is not of the same general kind or class as the physical objects enumerated in the statute. Further, it has previously been established that neither coworkers (*see Kaminski v Carlyle One*, 51 AD3d 473, 474 [2008]) nor safety instructions (*see Gordon v Eastern Ry. Supply*, 82 NY2d 555, 563 [1993]; *Cody v State of New York*, 52 AD3d 930, 931 [2008]) constitute safety devices. Although safety monitoring systems have been approved by OSHA for certain construction projects, including the type of project on which plaintiff was working (*see* 29 CFR 1926.502 [h]), Labor Law § 240 (1) " 'contain[s] its own specific safety measures' " (*Dalaba v City of Schenectady*, 61 AD3d 1151, 1153 [2009], quoting *Long v Forest-Fehlhaber*, 55 NY2d 154, 160 [1982]). Thus, we find that the word "device" as used in Labor Law § 240 (1) does not include a system in which a person acts as a safety monitor, spotter, or lookout (*see Kennedy v Pine Hill Coffee Serv., Inc.*, 4 Misc 3d 351, 353 [2004]; *compare Mat-*

---

**1.** This purpose has been recognized; it is well established that "the question of whether an elevation-related safety device provides the statutorily mandated protection is resolved as a matter of law 'where the device collapses, slips or otherwise fails to *perform its function of supporting the workers and their materials*' " (*Squires v Marini Bldrs.*, 293 AD2d 808, 808-809 [2002], *lv denied* 99 NY2d 502 [2002] [emphasis added], quoting *Beesimer v Albany Ave./ Rte. 9 Realty*, 216 AD2d 853, 854 [1995]).

*ter of Zalenski v Crucible Steel*, 91 AD2d 807, 808-809 [1982]).[2] Finally, the contention that no other safety device was appropriate is unavailing; plaintiff was not "required to prove what additional safety devices would have prevented his injury" (*Cody v State of New York*, 52 AD3d at 931). Accordingly, as plaintiff established that defendants failed to provide him with a safety device, and that violation was a proximate cause of his fall (*see Pearl v Sam Greco Constr., Inc.*, 31 AD3d 996, 997-998 [2006], *lv denied* 11 NY3d 710 [2008]), partial summary judgment was properly granted (*see Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 289 [2003]; *Dalaba v City of Schenectady*, 61 AD3d at 1152).

Next, Russo contends that Supreme Court should have dismissed common-law indemnification claims by the Norstar defendants and Pinnacle because plaintiff did not sustain a "grave injury" within the meaning of Workers' Compensation Law § 11, which prohibits noncontractual third-party indemnification claims against employers except in the case of such an injury. The Norstar defendants and Pinnacle contend that plaintiff's grave injury was proved as a matter of law. As relevant here, a grave injury is "an acquired injury to the brain caused by an external physical force resulting in permanent total disability" (Workers' Compensation Law § 11), a standard that requires a showing that the injured worker is not employable "[i]n any capacity" (*Rubeis v Aqua Club, Inc.*, 3 NY3d 408, 417 [2004]).

Russo submitted the deposition testimony of several witnesses demonstrating that plaintiff's condition and capabilities have improved well beyond initial expectations, and expert affidavits purporting to demonstrate that he is employable or may eventually become so. By one of these affidavits, neurologist James Storey Jr. opined that plaintiff's abilities would continue to improve and that he is able to perform jobs that involve routine repetitive work, although he should not perform work that involves facial recognition or reading skills or that requires exposure to hazards. This opinion was based on Storey's examination of plaintiff several months earlier as well as review of medical and rehabilitation records, diagnostic studies, and deposition transcripts. We do not find it so entirely speculative or unsupported by an evidentiary foundation as to be completely

---

2. To the extent that dicta regarding safety monitoring systems in *Kindlon v Schoharie Cent. School Dist.* (66 AD3d 1200, 1202 [2009]) may be read to stand for the contrary proposition, it should not be followed.

lacking in probative force (*compare Gray v South Colonie Cent. School Dist.*, 64 AD3d 1125, 1128 [2009]).

In opposition, Pinnacle and the Norstar defendants submitted the affidavit of a physician who is board-certified in physical medicine and rehabilitation, opining that as a result of plaintiff's visual agnosia (a condition that prevents him from recognizing faces and objects), poor short-term memory, and other significant cognitive deficits, he is permanently and totally disabled from employment in any capacity and will require supported living and supervision for the rest of his life. This opinion was supplemented by, among other things, the affidavit of plaintiff's father describing his limitations, which include, among other things, the inability to recognize his own family members, determine whether a person in a photograph is male or female, or distinguish between a bottle of soda and one of windshield washer fluid. While plaintiff's evidence is compelling, there are nonetheless issues of fact and credibility posed which may not be summarily resolved. In light of the conflicting expert opinions, plaintiff's permanent unemployability has not been demonstrated so conclusively as to be resolved as a matter of law (*see Herzog v Schroeder*, 9 AD3d 669, 670 [2004]).

Further, the grave injury issue is not resolved by the guardianship order, plaintiff's eligibility for Social Security disability benefits, or by a determination of the Workers' Compensation Board that he is permanently and totally disabled. Generally, "the determination of one administrative agency is not binding on another agency considering the same question under a different statute" (*Matter of Bukovinsky v Bukovinsky*, 299 AD2d 786, 787-788 [2002], *lv dismissed* 100 NY2d 534 [2003]). While such determinations have been found sufficient to raise questions of fact as to whether a grave injury has occurred (*see Way v Grantling*, 289 AD2d 790, 793 [2001]), they are not dispositive (*see Rubeis v Aqua Club, Inc.*, 3 NY3d at 417 n). Thus, Supreme Court properly found issues of fact precluding summary judgment for any party on this issue.[3]

Next, the Norstar defendants and Pinnacle contend that Supreme Court erred in denying their motions for summary

---

**3.** Although the Norstar defendants and Pinnacle did not raise the grave injury issue in their initial moving papers, summary judgment in their favor on this issue is allowed. Where at least one party has moved for summary judgment, both Supreme Court and this Court have the authority to search the record and grant judgment to any party on that issue (*see* CPLR 3212 [b]; *Dickson v Slezak*, 73 AD3d 1249, 1250 n 3 [2010]; *Schultes v Kane*, 50 AD3d 1277, 1278 [2008]).

judgment on their claims for common-law and contractual indemnification. Initially, contrary to Pinnacle's contention, its indemnification obligations do not depend on a determination that it was actively negligent, as its contract with NBC includes Pinnacle's express agreement to indemnify NBC for the acts of its subcontractors (*see Walls v Sano-Rubin Constr. Co.*, 4 AD3d 599, 602 [2004]). Moreover, the indemnification clause in the contract between Pinnacle and NBC is not unenforceable on the ground that it purports to indemnify a party for its own negligence (*see* General Obligations Law § 5-322.1 [1]). The clause requires Pinnacle to indemnify NBC and its agents and employees only "[t]o the fullest extent permitted by law," and "[t]his limiting language alone operates to insulate the clause from the ambit of General Obligations Law § 5-322.1 (1)" (*Ostuni v Town of Inlet*, 64 AD3d 854, 856 [2009]). Pinnacle's obligation is further limited to require indemnification "only to the extent caused in whole or in part by negligent acts or omissions of [Pinnacle], [Pinnacle's] [s]ub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable." This partial indemnification agreement does not indemnify NBC for its own negligence and, therefore, does not violate General Obligations Law § 5-322.1 (*see Brooks v Judlau Contr., Inc.*, 11 NY3d 204, 210-211 [2008]; *Ostuni v Town of Inlet*, 64 AD3d at 855-856).

■ Supreme Court properly concluded that issues of fact preclude summary judgment on these indemnification claims. "Unless the proposed indemnitee is found to be free from active negligence, conditional summary judgment for either common-law or contractual indemnification against a proposed indemnitor is premature" (*Husted v Central N.Y. Oil & Gas Co., LLC*, 68 AD3d 1220, 1223 [2009] [citations omitted]). The conclusion that the use of a safety monitoring system violated Labor Law § 240 (1) raises questions of fact as to the active negligence of NBC and Pinnacle. By contract, NBC required Pinnacle to "comply with safety measures indicated by [NBC]," and Pinnacle's contract with Russo included a similar provision. NBC held weekly safety meetings with subcontractors at which NBC and Pinnacle agreed to use the safety monitoring system. In turn, Pinnacle's representative allegedly instructed Russo to use that system. Moreover, NBC retained an independent firm to conduct biweekly safety inspections, and NBC representatives visited the site daily, including the morning of the accident, to inspect construction progress and identify safety is-

sues. In the event of a safety problem, NBC retained the authority to direct subcontractors to take corrective action. Thus, whether or not Russo was negligent in implementing the safety monitoring system,[4] issues of fact as to the active negligence of NBC and Pinnacle render partial summary judgment premature (*see McKeighan v Vassar Coll.*, 53 AD3d 831, 833-834 [2008]; *Squires v Marini Bldrs.*, 293 AD2d 808, 809 [2002], *lv denied* 99 NY2d 502 [2002]).

We reach a different conclusion as to contractual indemnification claims raised against Russo by NDLP and the Albany Housing Authority. Russo's contract with Pinnacle required him to indemnify "the Owner, [Pinnacle], Architect, Architect's consultants, and agents and employees of any of them." The contract incorrectly identified NBC as the owner, and Russo concedes that the misidentification creates an issue of fact as to his intention to indemnify NBC. However, nothing in the contractual language indicates that Russo "expressly agreed" to indemnify NDLP or the Albany Housing Authority (Workers' Compensation Law § 11). "[W]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed" (*Tonking v Port Auth. of N.Y. & N.J.*, 3 NY3d 486, 490 [2004] [internal quotation marks and citations omitted]). Thus, these indemnification claims should have been dismissed.

PETERS, J.P., ROSE, LAHTINEN and McCARTHY, JJ., concur.

Ordered that the order entered September 1, 2009 is modified, on the law, without costs, by reversing so much thereof as denied third-party defendant's cross motion for summary judgment dismissing the contractual indemnification claims of defendant Norstar Development USA, L.P. and defendant Albany Housing Authority against him; cross motion granted to said extent and said claims dismissed; and, as so modified, affirmed.

Ordered that the order entered December 11, 2009 is affirmed, without costs.

---

4. Russo's deposition testimony that he warned plaintiff seconds before he fell contradicted an earlier statement in which he said that several minutes passed between his warning and the accident. Moreover, he testified that he believed he was allowed to do other work while acting as a safety monitor and that he was cleaning a seam on the roof when plaintiff fell; however, the pertinent regulation requires that "[t]he safety monitor shall not have other responsibilities which could take the monitor's attention from the monitoring function" (29 CFR 1926.502 [h] [1] [v]).