*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  March 31, 2016                521423
_____

MICHAEL BILLERA,

                    Respondent-
                    Appellant,

        v

MERRITT CONSTRUCTION, INC.,

                    Respondent-
                    Appellant,

        and

VILLAGE OF CATSKILL,

                    Appellant-
                    Respondent,
                    et al.,
                    Defendant.

(Action No. 1.)

_____          OPINION AND ORDER

JOHN ANNESE et al.,

                    Respondents-
                    Appellants,

        v

COUNTY OF GREENE,

                    Defendant,

        and

VILLAGE OF CATSKILL,

                    Appellant-
                    Respondent,

        and

MERRITT CONSTRUCTION, INC.,

                    Respondent-
                    Appellant.

(Action No. 2.)

_____

Calendar Date:   February 19, 2016

Before:   Peters, P.J., Garry, Rose, Lynch and Clark, JJ.

_____

        Shantz & Belkin, Latham (M. Randolph Belkin of counsel),
for appellant-respondent.

        Ralph C. Lewis Jr., Catskill, for Michael Billera,
respondent-appellant.

        Napierski, VanDenburgh, Napierski & O'Connor, LLP, Albany
(Thomas J. O'Connor of counsel), for Merritt Construction, Inc.,
respondent-appellant.

        Basch & Keegan, LLP, Kingston (Derek J. Spada of counsel),
for John Annese and another, respondents-appellants.

_____

Garry, J.

        Appeal from an order of the Supreme Court (Platkin, J.),
entered October 8, 2014 in Greene County, which, among other
things, partially denied a motion by defendant Village of
Catskill for, among other things, summary judgment dismissing
the complaints against it.

        Defendant Merritt Construction, Inc. was retained by
defendant County of Greene to perform construction work on a
stretch of roadway within the County.  Part of this project
required pile driving, that is, driving steel sheets into the
ground adjacent to the roadway by means of a crane with a hammer
attached.  To allow the crane to access the site, it was
necessary to excavate and remove a portion of a nearby fire
hydrant connected to a water main owned by defendant Village of
Catskill.  Village officials were therefore called in to consult

on this part of the work. A nearby valve was closed in an attempt to cut off the water flow to the hydrant. This valve did not fully close; after the top portion of the hydrant was removed, there was a "drip" of water leaking from the remaining bottom portion of the hydrant. Following discussions between Merritt's superintendent, the Village Water Department foreperson and the County Engineer, it was decided that, despite this drip, Merritt would backfill over the hydrant and water main and proceed with the necessary pile driving work, leaving the leak to be addressed at a later date.

Approximately two weeks later, on a Friday evening, the Village was notified that there was water coming out of the ground in the area of this work site. Village officials arriving on the scene observed water seeping out of the ground "like a garden hose," and running down the shoulder of the roadway. The Village officials decided to monitor the leak over the weekend and meet with workers from Merritt the following Monday to then ascertain the source of the leak. The leak thus persisted through the weekend; the Village official tasked with monitoring it described it as staying approximately the same size. An employee of the County Highway Department who passed by the site described it as a "substantial" amount of water "at least a foot wide [and] an inch and a half deep." In the early morning hours that following Monday, the Village was notified that the water plant that processed the Village's water was experiencing a significant increase in the flow of water through its system, which was running "full bore." Workers arriving at the site discovered that the water main attached to the hydrant had burst. Flooding and a mudslide had damaged a nearby residence leased by plaintiff Michael Billera, and owned by plaintiffs John Annese and Jessica Montague.

Billera and, separately, Annese and Montague commenced actions against Merritt, the County and the Village, asserting that defendants had been negligent in failing to take actions to prevent the rupture of the water main, among other things. Following joinder of issue, each of the defendants asserted cross claims against the other seeking contribution and common-law indemnification. The County also asserted a cross claim for contractual indemnification against Merritt. Thereafter, the

Village moved for leave to amend its answer to include the affirmative defense of governmental immunity and add a cross claim against Merritt for contractual indemnification, and also seeking summary judgment dismissing the claims against it. Merritt and the County jointly cross-moved for summary judgment on their cross claims against the Village for common-law indemnification and also sought dismissal of plaintiffs' claims against them.[1]  Finally, Billera cross-moved for summary judgment on his claims against the Village and Merritt.

Supreme Court denied the motion by the Village except to the extent of allowing amendment of the answer to include a cross claim for contractual indemnification against Merritt.  The court granted summary judgment to both Merritt and the County dismissing plaintiffs' complaints against them, and dismissed the cross claims against them by the Village seeking contribution and common-law indemnification.  The court also denied Billera's cross motion for summary judgment against the Village.  Except for the County, all of the parties now appeal.

Initially, the Village asserts that Supreme Court erred by refusing to allow them leave to serve an amended answer presenting the affirmative defense of governmental immunity. Specifically, the Village argues that it is entitled to immunity for the discretionary decision of Village employees not to take additional action regarding the leak based upon their concern for maintaining an adequate supply of water for firefighting.  A threshold inquiry in determining if a municipality is entitled to immunity in a negligence action is "whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose" (Applewhite v Accuhealth, Inc., 21 NY3d 420, 425 [2013]; accord Wittorf v City of New York, 23 NY3d 473, 478-479 [2014]).  Where the alleged negligence arose out of proprietary, rather than governmental acts, no immunity will attach and a municipality will generally be liable to the same extent as a private actor (see D & D of Delhi, Inc. v

_____

[1]  Plaintiffs did not oppose the motion to the extent that it sought summary judgment on their claims asserted against the County.

Village of Delhi, 47 AD3d 1117, 1118 [2008]; Lemery v Village of Cambridge, 290 AD2d 765, 766 [2002]).  The maintenance of a municipal water system to provide water for the private use of residents has been deemed to be a proprietary function (see De Witt Props. v City of New York, 44 NY2d 417, 423-424 [1978]; D & D of Delhi, Inc. v Village of Delhi, 47 AD3d at 1118).  However, where the alleged negligence stems from municipal efforts to protect the safety of the public by "aggregating and supplying water for the extinguishment of fires," it is engaged in a government function entitled to immunity (Canavan v City of Mechanicville, 229 NY 473, 476 [1920]).  These established rules can present challenges as applied to modern municipal water systems that are used to provide water to both homes and hydrants (see County of Nassau v South Farmingdale Water Dist., 62 AD2d 380, 388 [1978], affd 46 NY2d 794 [1978]).  In such cases, where a municipality can be seen to be serving dual governmental and proprietary roles, we must look to "the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred" (Weiner v Metropolitan Transp. Auth., 55 NY2d 175, 182 [1982]).

Here, the Village submitted the affidavit testimony of the foreperson of the Village Water Department who participated in the decision not to immediately attempt to repair the leak when it was first observed.  He stated that attempting immediate repairs to the faulty valve would have required shutting down the Village's water supply from the main, which would then deprive all of the Village fire hydrants of a water supply and "shut down the Village's ability to fight fires."  Therefore, those on the scene collectively "weighed the existence of a slight drip of limited duration against a lack of water to the Village fire hydrants and the collective decision was the leak was the better alternative."  Similar affidavit testimony was submitted from another Village official who had responded to the work site approximately two weeks later, on the Friday evening when water was reported to be leaking above ground.  This official stated that the decision was made to monitor the leak over the weekend rather than taking any immediate action to address it because the risk of erosion was outweighed by the need to maintain the flow of water to the Village hydrants for firefighting purposes.  In light of this evidence, we disagree with Supreme Court's finding

that the proposed amendment was plainly without merit and, thus, find that the court improvidently exercised its discretion in refusing to allow the Village to assert the affirmative defense (see CPLR 3025 [b]; State of New York v Ladd's Gas Sta., 198 AD2d 654, 654-655 [1993]; see also Greene v Hayes, 30 AD3d 808, 809 [2006]).

Turning to the merits, however, we agree with Supreme Court that many of plaintiffs' allegations of negligence involve actions and omissions of a proprietary nature – such as the Village's failure to adequately maintain the water main, investigate the source of the leak, or supervise the work being performed – that were unconnected to the Village's decision not to shut off the water main. The Village argues that immediately repairing the leak would necessarily have required that the water flow to all hydrants in the Village be shut down. However, this does not wholly resolve the claim, as it fails to address other potential and reasonable actions that might have prevented or mitigated the leak and its subsequent impact. Moreover, there are factual issues relative to this claimed justification for declining to shut off the water supply. For instance, there was no evidence of similar concern as to maintaining firefighting capability when the Village shut off the water supply during the initial excavation and hydrant removal.[2] Notably, an emergency plan in place for the project also called for turning off the water supply. Further, there was testimony from Merritt's superintendent suggesting that the decision to not undergo immediate repairs to the leak may have been based, at least in some part, by the need to order additional supplies and budgetary concerns. Accordingly, there are factual issues relative to the application of the affirmative defense of governmental immunity asserted by the Village, as well as the reasonableness of other actions that were strictly proprietary in nature, barring an award of summary judgment (see Luckey v City of New York, 120 AD3d 403, 404 [2014]; Gilberti v Town of Spafford, 117 AD3d 1547,

---

[2] A Village official estimated that the main water supply would have to be shut down for "a couple hours" to replace the leaky valve after the remaining portion of the hydrant was first observed to be dripping.

1550 [2014]; Madden v Town of Greene, 64 AD3d 1117, 1120 [2009]; see generally Miller v State of New York, 62 NY2d 506, 513 [1984]).

Next, we find that Supreme Court erred in granting summary judgment dismissing plaintiffs' complaints against Merritt. "[O]rdinarily, breach of a contractual obligation will not be sufficient in and of itself to impose tort liability to noncontracting third parties upon the promisor" (Church v Callanan Indus., 99 NY2d 104, 111 [2002]; accord Moran v City of Schenectady, 47 AD3d 1001, 1002 [2008]). There are three specific recognized exceptions to this rule, however, and, as relevant here, liability may attach "where the contracting party, in failing to exercise reasonable care in the performance of his [or her] duties, 'launche[s] a force or instrument of harm'" (Espinal v Melville Snow Contrs., 98 NY2d 136, 140 [2002], quoting Moch Co. v Rensselaer Water Co., 247 NY 160, 168 [1928]; see Durrans v Harrison & Burrowes Bridge Constructors, Inc., 128 AD3d 1136, 1137 [2015]). Merritt submitted the affidavit of a licensed engineer in support of its motion, but this expert was merely able to opine that it was impossible to determine what caused the water main break, and that "[t]he fact that construction was ongoing nearby at the time of the failure is only one possible contributing factor among many." Considering the record evidence as to the work that Merritt had performed at the site immediately prior to the appearance of any leak, and this expert's inability to rule out Merritt's actions as a cause of the leak, we find that Merritt failed to meet its prima facie burden of demonstrating an entitlement to summary judgment (see Kelley v Schneck, 106 AD3d 1175, 1179-1180 [2013], lv dismissed 21 NY3d 1069 [2013]; Rubistello v Bartolini Landscaping, Inc., 87 AD3d 1003, 1005 [2011]; Grady v Hoffman, 63 AD3d 1266, 1267 [2009]). In addition, as Merritt may be found to have caused or contributed to plaintiffs' damages, the court also erred in dismissing the cross claims for common-law indemnification and contribution asserted against Merritt by the Village.

Further, in light of this determination, the Village was properly granted leave to amend its answer to include a claim for contractual indemnification against Merritt. The contract between the County and Merritt includes a provision to this

effect, and, as it limits Merritt's indemnification obligation to its own negligence, but does not extend to negligence attributable to the Village, the provision is not rendered invalid by General Obligations Law § 5-322.1 (see Brooks v Judlau Contr., Inc., 11 NY3d 204, 210 [2008]; Miranda v Norstar Bldg. Corp., 79 AD3d 42, 50 [2010]).  As issues of fact remain as to defendants' respective liability, Supreme Court properly denied that part of the Village's motion seeking summary judgment upon the claim for contractual indemnification.

Peters, P.J., Rose, Lynch and Clark, JJ., concur.


ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as (1) granted the cross motion by defendant Merritt Construction, Inc. for summary judgment dismissing the complaints against it, (2) denied that part of the motion by defendant Village of Catskill seeking leave to amend its answer to assert the affirmative defense of governmental immunity, and (3) dismissed the Village's cross claims for contribution and common-law indemnification against Merritt; Merritt's cross motion denied to said extent, the Village's motion granted to said extent and the Village's cross claims against Meritt reinstated; and, as so modified, affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court