VICTOR MARRERO, United States District Judge.
United Rentals (North America), Inc. ("UR" or "Plaintiff") initiated this action in the District of Connecticut on February 27, 2015, alleging breach of contract and seeking a declaratory judgment relating to alleged indemnification obligations of Conti Enterprises, Inc. ("Conti" or "Defendant"). ("Complaint," Dkt. No. 1.) Conti filed a motion to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). (See Dkt. No. 17.) UR then filed a Motion to Transfer to Another District, which was granted, and the case subsequently transferred to this Court. (See Dkt. Nos. 26, 43, 45, 46.) On November 18, 2015, UR filed an Amended Complaint ("Amended Complaint," Dkt. No. 44). Conti filed its Answer to the Amended Complaint on March 3, 2016 (Dkt. No. 50), *449 and on March 24, 2017 moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Motion," Dkt. No. 75).
For the reasons stated below, the Motion is DENIED.
I. BACKGROUND [1]
In September 2008, Conti of New York, LLC (a Conti entity) was hired by the Triborough Bridge and Tunnel Authority ("TBTA"), an affiliate agency of the Metropolitan Transit Authority ("MTA"), to repair the Whitestone Bridge. In connection with the repair work, Conti rented certain equipment from UR. The rental arrangement is reflected in a number of documents. UR and Conti entered into a National Account Agreement ("NAA"), dated August 1, 2009.[2] In addition, on August 4, 2009, UR and Conti entered into a rental contract ("Rental Agreement"), whereby Conti rented a JLG boom lift, serial number 0300118085 ("the Lift").
The Rental Agreement, at least according to UR, consisted of two pages: one page which bears the words "Rental Agreement" at the top, and a second page which is titled "Rental Agreement Additional Terms and Conditions." (See Amended Complaint, Ex. B.) Conti alleges it did not receive the "Rental Agreement Additional Terms and Conditions" page along with the "Rental Agreement" and notes that no facsimile transmission stamp appears on the additional terms page as it does on the Rental Agreement page.[3] (See Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def. Mem."), Dkt. No. 76, at 7; Amended Complaint, Ex. B at 2-3.)
The "Rental Agreement Additional Terms and Conditions" contained an indemnity provision, which states:
3. Indemnify/Hold Harmless: To the fullest extent permitted by law, Customer agrees to indemnify, defend and hold United harmless from and against any and all liability, claim, loss, damage, or costs (including, but not limited to, attorneys' fees, loss of profit, business interruption or other special or consequential damages, damages relating to bodily injury, damages relating to wrongful death) caused by or in any way arising out of or related to the operation, use, maintenance, instruction, possession, transportation, ownership or rental of the equipment, including, but not limited to, whenever such liability, claim, loss, damage or cost is founded, in whole or in part, upon any negligent or grossly negligent act or omission of United or the provision of any allegedly defective product by United. This indemnity provision *450 applies to any claims asserted against United based upon strict or product liability causes of action, breach of warranty or under any other theory of law.
(Amended Complaint, Ex. B at 3.)
In addition, regarding Conti's required insurance coverage, the additional terms and conditions require:
18. Customer's Insurance Coverage: Customer agrees to maintain and carry, at its sole cost, adequate liability, physical damage, public liability, property damage and casualty insurance for the full replacement cost of the Equipment, including, but not limited to all risks of loss or damage covered by the standard extended coverage endorsement, to cover any damage or liability arising from the handling, transportation, maintenance, operation, possession or use of the Equipment during the entire Rental Period. When requested, Customer shall supply to United proof of such insurance by Certificate of Insurance clearly setting forth the coverage for the Equipment and naming United as loss payee and additional insured; such insurance and evidence thereof to be in amounts and form satisfactory to United. The Certificate of Insurance and policy shall provide that, United shall receive no less than 30 days' notice prior to any cancellation of the insurance required hereunder.
(Id. )
Finally, according to the additional terms and conditions, the "Customer agrees to pay all reasonable costs of collection, court, attorneys' fees and other expenses incurred by United in the collection of any charges due under this Rental Agreement or in connection with the enforcement of its terms." (Id. )
On or about May 6, 2010, Conti employees Karl Fritz ("Fritz") and Richard O'Keefe, Jr. ("O'Keefe") allegedly sustained injuries after the Lift malfunctioned at the Whitestone Bridge project site. Fritz commenced an action in November 2010 against UR and other defendants for damages relating to his injuries. In April 2011, O'Keefe filed his own lawsuit as a result of his alleged injuries, in which defendants MTA and TBTA filed a Third-Party complaint against UR and others. These lawsuits ("Underlying Lawsuits") have since been consolidated in New York state court.
The Amended Complaint alleges that Conti breached the NAA and/or the Rental Agreement by: (1) failing to indemnify UR in the Underlying Lawsuits, and (2) failing to secure liability insurance providing "Additional Insured coverage" to UR for any liability arising from the use of the Lift. The Amended Complaint also seeks a declaratory judgment that: (1) Conti is obligated to defend and indemnify UR in the Underlying Lawsuits; (2) Conti must pay UR's defense costs incurred in the Underlying Lawsuits going forward; and (3) Conti must pay all amounts UR is held liable for and obligated to pay by way of settlement or judgment in connection with the Underlying Lawsuits.
In its motion for summary judgment, Conti argues: (1) the indemnification provision of the Rental Agreement is void and unenforceable as a matter of law under New York General Obligations Law § 5-322.1 ; (2) the insurance procurement provision was not breached and is not enforceable as a matter of law; and (3) The Rental Agreement does not provide for an award of attorneys' fees under the "American Rule" of attorney fee recovery. (See generally Def. Mem.; Defendant's Reply Memorandum of Law in Support of Motion for Summary Judgment ("Reply Mem."), Dkt. No. 86.) Conti argues that UR's complaint should be dismissed for these reasons and requests that the Court issue an order *451 declaring that Conti (i) is not obligated to defend and indemnify UR in the current action and the Underlying Lawsuits; (ii) is not obligated to fund UR's prior and/or future defense costs in the Underlying Lawsuits; and (iii) is not obligated to pay, on behalf of UR, all sums UR becomes obligated to pay by reason of liability for damages, including attorneys' fees and costs in connection with this action or the Underlying Lawsuits. (Def Mem. at 21.)
In opposition, UR argues: (1) the Rental Agreement's indemnity provision is valid and enforceable; (2) Conti's motion for summary judgment should be denied because there has been no finding of fault; (3) Conti breached the insurance procurement provision of the Rental Agreement by not naming UR as an "additional insured" for all liability arising from use of the Lift; and (4) Section 22(b) of the Rental Agreement provides for the recovery of attorneys' fees incurred by UR in connection with the enforcement of the agreement. (See generally Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl. Opposition"), Dkt. No. 82.)
II. LEGAL STANDARD
Summary judgment is appropriate if the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) ; Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making this assessment, the Court looks to the relevant substantive law to determine which facts are material: "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To survive summary judgment, the disputed factual issues must also be "genuine"-that is, "sufficient evidence [must] favor[ ] the nonmoving party for a jury to return a verdict for that party." Id. at 249, 106 S.Ct. 2505. The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986).
The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. See Celotex, 477 U.S. at 323, 106 S.Ct. 2548. If the moving party satisfies its burden, the nonmoving party must provide specific facts showing that there is a genuine issue for trial in order to survive the motion for summary judgment. See Shannon v. New York City Transit Auth., 332 F.3d 95, 98-99 (2d Cir. 2003). In determining whether the moving party is entitled to judgment as a matter of law, the court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008). Although the party opposing summary judgment may not "rely on mere conclusory allegations nor speculation," D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), if there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party that supports a finding that a material factual dispute exists, summary judgment is improper. See Gummo v. Village of Depew, N.Y., 75 F.3d 98, 107 (2d Cir. 1996).
III. DISCUSSION
1. Indemnity Provision
New York General Obligations Law § 5-322.1 states:
A covenant, promise, agreement or understanding in, or in connection with or *452 collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenances and appliances including moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property contributed to, caused by or resulting from the negligence of the promisee, his agents or employees, or indemnitee, whether such negligence be in whole or in part, is against public policy and is void and unenforceable ....
N.Y. Gen. Oblig. Law § 5-322.1.
Conti argues that the indemnity provision here is void and unenforceable under § 5-322.1 because it attempts to exempt UR, as indemnitee, from liability based on its own negligence. (Def. Mem. at 10-13.) In opposition, UR argues that the indemnity provision is valid because it calls for only partial indemnification, and that UR is entitled to enforce the indemnification provision against Conti for any liability not attributable to UR's own negligence. (Pl. Opposition at 8-15.) UR's argument that the indemnity provision contemplates partial indemnification is based on the inclusion of the words "to the fullest extent permitted by law" in the provision. (Id. at 8.)
In support of its argument, UR relies in large part on Brooks v. Judlau Contracting, Inc., 11 N.Y.3d 204, 869 N.Y.S.2d 366, 898 N.E.2d 549 (2008). Before the Court of Appeals in Brooks was an indemnification provision that stated in relevant part:
The Subcontractor shall, to the fullest extent permitted by law, hold the Contractor and the Owner, their agents, employees and representatives harmless from any and all liability, costs, damages, attorneys' fee, and expenses from any claims or causes of action of whatever nature arising from the Subcontractor's work, including all claims relating to its subcontractors, suppliers or employees, or by reason of any claim or dispute of any person or entity for damages from any cause directly or indirectly relating to any action or failure to act by the Subcontractor, its representatives, employees, subcontractors, or suppliers.
Id. at 209, 869 N.Y.S.2d 366, 898 N.E.2d 549. The Court held that the provision did not violate General Obligations Law § 5-322.1 because "there is no language within General Obligations Law § 5-322.1 that prevents partial indemnification provisions such as the one currently before us from being enforced in a case where it is shown that both a general contractor and its subcontractor are joint tortfeasors." Id. at 210-11, 869 N.Y.S.2d 366, 898 N.E.2d 549. The Court, therefore, allowed the general contractor to enforce the indemnification provision, which it found contemplated partial indemnification, against the subcontractor for the portion of the damages attributable to the negligence of the subcontractor. Id. at 210, 869 N.Y.S.2d 366, 898 N.E.2d 549. However, the Court was clear that the indemnification provision in question did not require the subcontractor to indemnify the contractor for the contractor's own negligence. Id. at 209, 869 N.Y.S.2d 366, 898 N.E.2d 549 ("The provision is clear, obligating [subcontractor] to indemnify [contractor] only when it is shown that damages were caused by [subcontractor]'s own negligence.").
The language of the indemnity provision in Brooks, which indemnified the contractor only for the subcontractor's negligence, is in stark contrast to the provision at issue here, which provided that Conti would indemnify UR "[t]o the fullest extent permitted by law ... from and against any and all liability ... including, but not limited to, whenever such liability, *453 claim, loss, damage or cost is founded, in whole or in part, upon any negligent or grossly negligent act or omission of United...." (Amended Complaint, Ex. B at 3 (emphasis added).) While UR is correct that the provision at issue here, like the one in Brooks, includes the words "to the fullest extent permitted by law," the provision in Brooks specifically calls for indemnification in the case of negligence on the part of the subcontractor, while the provision in the instant case requires indemnification of UR for UR's negligence. In fact, the provision here contemplates full indemnification-namely, that Conti would have to indemnify UR for liability caused even "in whole" by UR's negligence. The plain language of the provision therefore appears to violate § 5-322.1. See Bright v. Tishman Const. Corp. of N.Y., No. 95-cv-8793, 1998 WL 63403, at *4 (S.D.N.Y. Feb. 17, 1998) (finding, in light of the purposes underlying Section 5-322.1, that the phrase "to the fullest extent permitted by law" alone is "an insufficient limitation on the indemnification provision to remove the contract from the proscriptive scope of Section 5-322.1" without "sufficient clarity that the indemnification does not run to the negligent conduct of the indemnitee").
The cases cited by UR do not hold otherwise and are distinguishable from the dispute before this Court. See, e.g., Dutton v. Charles Pankow Builders, Ltd., 296 A.D.2d 321, 745 N.Y.S.2d 520, 521 (1st Dep't 2002) (indemnification provision enforceable because the clause called for partial, not full, indemnification of the general contractor "in view of the phrases limiting the subcontractor's obligation to that permitted by law and excluding liability created by the general contractor's sole and exclusive negligence" (citation omitted) (emphasis added) ); Miranda v. Norstar Building Corp., 79 A.D.3d 42, 909 N.Y.S.2d 802, 809 (3d Dep't 2010) (indemnification clause enforceable where the clause required the subcontractor to indemnify the general contractor to the "fullest extent permitted by law," and was further limited to require indemnification only to the extent caused in whole or in part by negligent acts or omissions of the subcontractor ); Ostuni v. Town of Inlet, 64 A.D.3d 854, 881 N.Y.S.2d 678, 680-81 (3d Dep't 2009) (same).[4]
While there is some authority indicating that the inclusion of the phrase "to the fullest extent permitted by law" by itself could be sufficient to overcome a § 5-322.1 issue, those cases do not directly address an indemnification provision that also explicitly calls for indemnification of an indemnitee for negligence caused "in whole or in part" by the indemnitee. See, e.g., Eberl v. FMC Corp., 872 F.Supp.2d 250, 263 (W.D.N.Y. 2012) ("[T]o prevent an otherwise improper indemnity clause from being rendered void by operation of § 5-322.1, there must be some 'language limiting the subcontractor's obligation to that permitted by law or to the subcontractor's negligence.' " (emphasis added) (citing Itri Brick & Concrete Corp. v. Aetna Cas. & Sur. Co., 89 N.Y.2d 786, 795, 658 N.Y.S.2d 903, 680 N.E.2d 1200 (1997) );
*454 Bush v. City of New York, 195 Misc.2d 882, 762 N.Y.S.2d 775, 779 (Sup. Ct. 2003) ("[A]n indemnification agreement containing the phrase 'to the fullest extent permitted by law' is an indemnification agreement intended to avoid the proscriptive ambit of GOL 5-322.1."). In the Court's view, a careful reading of the cases and the plain language of § 5-322.1 indicate that the provision in the present case should be read as violating § 5-322.1.
However, even agreements that purport to hold a subcontractor fully liable for a general contractor's negligence are not void under General Obligations Law § 5-322.1 without a finding of negligence on the part of the general contractor. See Itri Brick & Concrete Corp. v. Aetna Cas. & Sur. Co., 89 N.Y.2d 786, 795 n.5, 658 N.Y.S.2d 903, 680 N.E.2d 1200 (1997) (collecting cases); see also Maxwell v. Toys R Us, 258 A.D.2d 630, 685 N.Y.S.2d 760, 760 (2d Dep't 1999) ("The parties' indemnification agreement is, on its face, violative of General Obligations Law § 5-322.1, since it impermissibly requires ... [contractor to] indemnify [owner] for liability arising from acts of negligence of [owner] .... [However,] no finding has yet been made with respect to the parties' respective fault, if any, for the underlying injury and, therefore, any award of summary judgment at this juncture would be premature.").
The Underlying Lawsuits are ongoing and therefore there have been no findings with respect to the negligence of the parties involved. The Court declines to make such findings at this time since, as UR argues, there are triable issues of fact with respect to UR's negligence (see Pl. Opp. at 16-17; UR's Response to Conti's Rule 56.1 Statement at 7-8).[5] In fact, in its Reply brief, Conti agrees that "the jury in the Bronx could find United 100% responsible for the injuries" or the "jury could also find plaintiff [s] 100% responsible for the accident and United to be negligent free," and that "[v]arious other possible results could obtain with United being found only partially negligent." (Reply Mem. at 3.) Because, as Conti agrees, "it is pure speculation for this Court to guess as to what th[e] result will be" (id. ) in the Underlying Lawsuits, summary judgment on this point would be premature.
For these reasons, the Court denies summary judgment on this part of Conti's motion.
2. Insurance Procurement Provision
Conti argues that it is entitled to summary judgment on UR's second breach of contract claim, which alleges that Conti failed to secure liability insurance providing "Additional Insured coverage to UR." (See Complaint ¶ 20.) First, Conti argues that it satisfied its obligations under the insurance procurement provision by obtaining insurance, which included an endorsement for "Additional Insured-Lessor of Leased Equipment-Automatic Status When Required In Lease Agreement With You." (See Def. Mem. at 15-16; Ruggiero Decl. Ex. 1 at 2.)
While it is true that the letter from Liberty Mutual Insurance that Conti cites states that Conti is the named insured under a Commercial General Liability Coverage Form, which is endorsed "Additional Insured-Lessor of Leased Equipment-Automatic *455 Status When Required In Lease Agreement With You" (Ruggiero Decl. Ex. 1 at 2), the letter also states that the liability coverage of an additional insured applies "only with respect to liability ... caused, in whole or in part, by your [Conti's] maintenance, operation or use of equipment leased to you by such person or organization" (id. at 8).
Based on this language, Conti has not shown as a matter of law that it satisfied its obligations under the insurance provision of the contract. See Clapper v. Cty. of Albany, 188 A.D.2d 774, 591 N.Y.S.2d 258, 259-60 (3d Dep't 1992) (obligation to obtain comprehensive general liability insurance naming contractor as an additional insured was not satisfied by the coverage obtained by subcontractor, which was limited to liability arising out of subcontractor's work); see also Hendershot v. Consol. Rail Corp., No. 95-cv-7899, 1998 WL 240495, at *3 (S.D.N.Y. May 12, 1998) (whether or not party complied with insurance requirement is a question of fact for the jury); Murray v. Wilbur Curtis Co. Inc., 189 A.D.2d 980, 592 N.Y.S.2d 837, 839 (3d Dep't 1993) (contract requiring franchisor to be included as an additional insured "indicat[ed] an intention that [franchisor]'s coverage be extended to all liability arising out of the activities contemplated by the agreement, including liability based upon [franchisor]'s own alleged negligence"); Roblee v. Corning Cmty. Coll., 134 A.D.2d 803, 521 N.Y.S.2d 861, 863 (3d Dep't 1987) (insurance provision requiring caterer to name college as additional insured was intended to have extended to all liability arising out of food-serving activities contemplated by the agreement, including liability based upon the college's own acts of negligence).
In addition-apparently in the alternative-Conti argues that (1) the insurance provision is limited to a request to maintain property insurance-to the exclusion of bodily injury-by Conti; (2) the provision "does not require Conti to name [UR] on any policy" (Def. Mem. at 17); and (3) UR's request regarding "additional insured" insurance is limited to certificates of insurance-not obtaining a policy. (Id. at 16-19.)
The first sentence of the insurance provision states:
Customer agrees to maintain and carry, at its sole cost, adequate liability, physical damage, public liability, property damage and casualty insurance for the full replacement cost of the Equipment, including, but not limited to all risks of loss or damage covered by the standard extended coverage endorsement, to cover any damage or liability arising from the handling, transportation, maintenance, operation, possession or use of the Equipment during the entire Rental Period.
(Amended Complaint, Ex. B at 3.)
According to Conti, this sentence contemplates insurance covering only property damage, since it mentions "physical damage," "property damage," "casualty insurance," "replacement cost," and an "extended coverage endorsement," which do not include bodily injury. (Def. Mem. at 16-17.) As UR notes, however, the sentence also contains the broad language that Conti must maintain insurance "to cover any damage or liability arising from the handling, transportation, maintenance, operation, possession or use of the Equipment." (Amended Complaint, Ex. B at 3 (emphasis added).) The plain language of the contract does not limit Conti's obligation to procure insurance to property damage. See Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc., 152 F.Supp.3d 15, 22 (D. Mass. 2015) (applying Massachusetts law, but persuasively finding that the same provision at issue here "require[d] insurance against a broad category of *456 risks, not merely damage to the equipment").
Conti's argument that the first sentence of the insurance procurement provision does not require Conti to name UR on any policy, but rather only obligates Conti to maintain insurance, likewise fails. Although the first sentence of the provision does not state explicitly that Conti was required to name UR as an additional insured, the next sentence of the insurance provision states: "When requested, Customer [Conti] shall supply to United proof of such insurance by Certificate of Insurance clearly setting forth the coverage for the Equipment and naming United as loss payee and additional insured; such insurance and evidence thereof to be in amounts and form satisfactory to United." (Amended Complaint, Ex. B at 3.) The reference in the second sentence to "proof of such insurance ... naming United as loss payee and additional insured" plainly shows that Conti was obligated to name UR as an additional insured. See Scottsdale, 152 F.Supp.3d at 21 ("This provision, while clumsily drafted, unambiguously shows that [customer] had a contractual obligation to name United Rentals as an additional insured. Neither sentence, on its own, states explicitly that United Rentals was to be an additional insured, but taken together, that is their clear effect.").
Conti's related argument, that the second sentence of the provision required Conti only to get certificates of insurance naming UR as an additional insured, but did not require Conti to procure a policy naming UR as an additional insured, is also unpersuasive. (See Def. Mem. at 18.) In support of this argument, Conti cites Trapani v. 10 Arial Way Associates, 301 A.D.2d 644, 755 N.Y.S.2d 396 (2d Dep't 2003). In Trapani, the Court held that "contract language that merely requires the purchase of insurance will not be read as also requiring that a contracting party be named as an additional insured." Id. at 398. In that case, the court found that a plain reading of the provision at issue "shows that it does not pertain in any way to additional insured coverage. Indeed, those words were never used .... [The contract] simply requires [subcontractor] to provide a certificate of insurance showing that [subcontractor] had both liability and workers' compensation coverage." Id. at 398-99. Such contractual language stands in contrast to the provision here which specifically refers to a "Certificate of Insurance clearly setting forth the coverage for the Equipment and naming United as loss payee and additional insured." (Amended Complaint, Ex. B at 3.)
For these reasons, the Court denies Conti's summary judgment motion as to this point as well.
3. Attorneys' Fees
Finally, Conti argues that UR is not entitled to an award of attorneys' fees associated with enforcing the contract under the Rental Agreement. (Def. Mem. at 19-21.)
Section 22(B) of the Rental Agreement Additional Terms and Conditions, under the heading "other provisions," states: "Customer agrees to pay all reasonable costs of collection, court, attorneys' fees and other expenses incurred by United in the collection of any charges due under this Rental Agreement or in connection with the enforcement of its terms." (Amended Complaint, Ex. B at 3.)
Conti argues that the "costs" and "charges" described in the provision refer to the costs and charges associated with renting the Lift, not litigation costs. (Def. Mem. at 20.) Conti cites Hooper Associates, Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989) for the rule that under New York law a party's intention to provide *457 counsel fees as damages for a breach of contract must be "unmistakably clear" from the language of the contract. ( Id. )
In opposition, UR argues that it seeks attorneys' fees incurred in connection with the enforcement of the terms of the rental agreement, as explicitly provided for in Section 22(B). See Monaghan v. United Rentals, Inc., No. CIV.A. 09-627, 2011 WL 6148636, at *5 (M.D. La. Dec. 9, 2011) (applying Louisiana law, but interpreting the same clause of a rental agreement with UR to require reimbursement for all costs associated with the enforcement of the indemnity provision of the rental agreement, including litigation expenses).
What is owed "in connection with the enforcement of [the Rental Agreement's] terms," and in particular, the terms of the indemnification provision of the agreement, may be affected by a future determination of whether the indemnification provision of the agreement is void. Therefore, the Court denies Conti's summary judgment motion at this time on this point as well. C.f. id. at *5 (UR entitled to reimbursement of costs associated with the enforcement of the indemnity provision of the rental agreement when the court found that the indemnity provision was enforceable).
IV. ORDER
For the reasons set forth above, it is hereby
ORDERED that the motion (Dkt. No. 75) of defendant Conti Enterprises, Inc. for summary judgment pursuant to Federal Rule of Civil Procedure 56 is DENIED.
SO ORDERED.

The factual summary presented herein derives from the following documents and related exhibits: Amended Complaint (Dkt. No. 44); Answer to Amended Complaint (Dkt. No. 50); Conti's Memorandum of Law in Support of its Motion for Summary Judgment (Dkt. No. 76); Declaration of Christopher Ruggiero in Support of Conti's Motion for Summary Judgment (Dkt. Nos. 77, 79); UR's Memorandum of Law in Opposition to Conti's Motion for Summary Judgment (Dkt. No. 82); UR's Response to Conti's Rule 56.1 Statement (Dkt. No. 83); Declaration of Gregory D. Podolak in Opposition to Conti's Motion for Summary Judgment (Dkt. No. 84); Conti's Reply Memorandum of Law in Support of the Motion for Summary Judgment (Dkt. No. 86). Except where specifically referenced, no further citation to these sources will be made.

The NAA was entered into by Conti and United Rentals, Inc., which is the parent company of UR. (See Amended Complaint, Ex. A at 4.) United Rentals, Inc. assigned the NAA to UR. (See Dkt. No. 39, Exhibit E at 2.)

Although Conti refers to a "Rental Agreement" throughout its motion, "Conti does not admit that the Rental Agreement is a binding contract. ... Conti reserves its rights to challenge the validity of what United purports to be a valid contract governing parties' the relationship [sic] at any time up to and throughout trial." (Def. Mem. at 1 n.1.)

See also Brief for Appellants, Bink v. F.C. Queens Place Assocs., LLC, 813 N.Y.S.2d 94 (App. Div. 2d Dep't 2006), 2005 WL 4715740, at *4 (specifying language in indemnification provision that the Court ultimately found enforceable included "[t]o the fullest extent permitted by law"and"allow[ed] indemnification 'unless caused by the sole negligence of the Indemnitee(s); Brief for Appellants, Murphy v. Columbia Univ., 773 N.Y.S.2d 10 (App. Div. 1st Dep't 2004), 2003 WL 25663023, at *65 (explaining that language in indemnification provision that the Court ultimately found enforceable included "[t]o the fullest extent permitted by Law" and allowed indemnification by the subcontractor for losses "arising in wh[o]le or in part and in any manner from the acts, omissions, breach or default of Subcontractor" (emphasis added) ).

While Conti presents substantial evidence intending to show UR's negligence, there are several open questions regarding whether, for example, UR was negligent in its inspections and maintenance of the Lift. (See, e.g., Ruggiero Decl. Ex. 20 (expert metallurgical report stating that proper inspection and maintenance of the Lift would have prevented the malfunction); Id. Ex. 22 at 4-8 (Lift manufacturer's service and maintenance manual indicating recommended processes for inspection and maintenance); Id. Ex. 23.)