## Gonzalez v GP-UHAB Hous. Dev. Fund Corp.

2025 NY Slip Op 30625(U)

February 24, 2025

Supreme Court, New York County

Docket Number: Index No. 154038/2019

Judge: Paul A. Goetz

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:** HON. PAUL A. GOETZ | **PART** 47 |
| *Justice* | |

-----------------------------------------------------------------------------X

SILVIA GONZALEZ,

                               Plaintiff,

                        - v -

GP-UHAB HOUSING DEVELOPMENT FUND
CORPORATION, MDG DESIGN & CONSTRUCTION, LLC,

                           Defendants.

-----------------------------------------------------------------------------X

MDG DESIGN & CONSTRUCTION, LLC

                         Plaintiff,

                  -against-

CHANEL CONSTRUCTION CORP.

                         Defendant.

-----------------------------------------------------------------------------X

| |
|---|
| **INDEX NO.** 154038/2019 |
| **MOTION DATE** 12/11/2023, 12/11/2023, 12/11/2023 |
| **MOTION SEQ. NO.** 004 005 006 |

### DECISION + ORDER ON MOTION

Third-Party
Index No. 595978/2019

The following e-filed documents, listed by NYSCEF document number (Motion 004) 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 184, 186, 187, 188, 189, 190, 191, 192, 195, 202, 203, 224, 225, 226, 227

were read on this motion to/for              JUDGMENT - SUMMARY          .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 185, 193, 196, 210, 211, 212, 213, 214, 228

were read on this motion to/for              JUDGMENT - SUMMARY          .

The following e-filed documents, listed by NYSCEF document number (Motion 006) 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 194, 197, 198, 199, 200, 201, 204, 205, 206, 207, 208, 209, 215, 216, 217, 218, 219, 220, 221, 222, 223

were read on this motion to/for              JUDGMENT - SUMMARY          .

[* 1]

This is an action to recover damages for personal injuries allegedly sustained by a construction worker on March 4, 2019, when, while working at a construction site located at 640 Riverside Drive, New York, New York (the Premises), the ladder plaintiff was standing on shifted, causing her to fall to the floor.

In motion sequence 004, third-party defendant Chanel Construction Corp. (Chanel) moves, pursuant to CPLR § 3212, for summary judgment dismissing defendant/third-party plaintiff MDG Design & Construction, LLC's (MDG) contribution and common-law indemnification claims as against it; and for summary judgment dismissing the Labor Law § 240(1) claim as against MDG and defendant GP-UHAB Housing Development Fund (UHAB) (together, defendants).

In motion sequence 005, defendants move, pursuant to CPLR § 3212, for summary judgment in their favor on their third-party contractual indemnification claims against Chanel.

In motion sequence 006, plaintiff Silvia Gonzalez (plaintiff) moves, pursuant to CPLR § 3212, for summary judgment in her favor on her Labor Law § 240(1) claims against MDG and defendant GP-UHAB Housing Development Fund (UHAB) (together, defendants), and on her common-law negligence and Labor Law § 200 claims as against MDG only.

## BACKGROUND

On the day of the accident, the Premises was owned by UHAB. UHAB hired MDG to perform general contracting services for a project at the Premises that entailed the renovation of several apartments. MDG subcontracted demolition work to Chanel. Plaintiff was employed by Chanel.

**154038/2019  GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT**
**Motion No.  004 005 006**

**Page 2 of 21**

2 of 21

[* 2]

*Plaintiff's 50-H Testimony (NYSCEF Doc. No. 166)*

Plaintiff testified that on the day of the accident, she was employed by Chanel as a demolition worker/laborer (plaintiff's 50-H at 9). Her duties included "pack[ing] the garbage and . . . pick[ing] up and collect[ing] the tools" (*id.* at 11). Her supervisor was a Chanel employee named "Angel" (*id.* at 9). Angel was the only person who gave her directions on how or where to work (*id.* at 27).

Plaintiff testified that the accident occurred around 1 p.m. Plaintiff was working in a studio apartment (*id.* at 27) on the eleventh floor of the Premises, performing demolition work (*id.* at 23). Angel also was working on the eleventh floor. At the time of the accident plaintiff was demolishing "a piece of the wall" in the apartment (*id.* at 29). To do this work, she was directed by Angel to use an aluminum "A-frame" ladder (the Ladder) that was already inside the apartment (*id.* at 33). The ladder had six rungs. No one was in the apartment with her at the time of the accident (*id.* at 37).

Immediately before the accident, plaintiff placed the Ladder in the apartment's bathroom and climbed to the fourth rung (*id.* at 39). She was "hammering in the highest part of the wall" close to the ceiling (*id.* at 42), when "the ladder moved and [she] lost [her] balance" and fell backwards off the Ladder (*id.* at 45). The Ladder did not fall (*id.* at 46).

After the accident, plaintiff told Angel what happened, and then went home (*id.* at 49). She did not know if Angel, or anyone else prepared an accident report.

*Plaintiff's Deposition Testimony (NYSCEF Doc. No. 167 and 168)*

Plaintiff's testimony largely follows her 50-H testimony. She confirmed that Angel gave her directions and was the only person who told her what to do on the day of the accident (plaintiff's tr at 58). She did not know about MDG or UHAB (*id.* at 63). She did not know who

**154038/2019   GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT**          **Page 3 of 21**
  **Motion No.  004 005 006**

[* 3]

provided the Ladder, or who owned it (*id.* at 66). Plaintiff also testified that she inspected the ladder before the accident, but she did not recall whether it had locks to keep it open (*id.* at 59-70).

At her second deposition, plaintiff testified that Angel directed her to demolish the bathroom wall in the apartment (plaintiff's second tr at 37). He told her to use "[a] hammer and a ladder" (*id.* at 38). She believed the Ladder was six feet tall (*id.* at 41). She picked up a claw hammer and set the Ladder up in the bathroom.

Plaintiff made sure that the Ladder was "locked and placed correctly" (*id.* at 44). Plaintiff testified that she checked the Ladder and "everything was okay" before she climbed up (*id.* at 46). Once on the Ladder, plaintiff held it with one hand while swinging the hammer with the other. She swung approximately eight times before the Ladder "moved forward and then it moved back" (*id.* at 64), causing her to fall backwards. She could not tell how much the ladder moved (*id.* at 66).

### *Deposition Testimony of Brent Sharman (UHAB's Consultant) (NYSCEF Doc. No. 170)*

Brent Sharman testified that on the day of the accident, he was a "consultant" for UHAB (Sharman tr at 9). He described UHAB as a "not for profit organization" that takes "temporary ownership" of distressed/foreclosed buildings and "oversee[s] the rehabilitation of those buildings" (*id.* at 9). He was the consultant for the Project (*id.* at 11). His duties included acting as a liaison between UHAB and the resident association of the Premises (*id.* at 12). He was not involved in overseeing the construction, and he did not know if UHAB had the authority to stop work or direct or instruct workers (*id.* at 34).

Sharman testified that UHAB retained MDG as a general contractor for the Project (*id.* at 16). He did not know if MDG subcontracted any work (*id.* at 24-25), and he was unfamiliar with Chanel (*id.* at 47).

Sharman did not go to the Premises every day. He was unsure if he was there on the day of the accident (*id.* at 35). He did not witness the accident (*id.* at 36). Sharman also testified that he did not receive any complaints about the condition of ladders at the Project (*id.* at 47). Sharman did not investigate or speak with anyone about the accident (*id.* at 36).

### *Deposition Testimony of Andre Riviere (MDG's Construction Superintendent) (NYSCEF Doc. No. 171)*

Andre Riviere testified that on the day of the accident, he was the construction superintendent for MDG and was assigned to the Project (Riviere tr at 9, 13). MDG was the general contractor for the Project (*id.* at 16), which was an interior and exterior renovation (*id.* at 31). MDG hired all the subcontractors for the Project, including Chanel. Chanel was responsible for the "carpentry, painting, tiling, framing, cleaning," including installing sheetrock and demolition work (*id.* at 38-39). MDG did not provide any equipment to workers (*id.* at 57). Chanel provided their own equipment (*id.* at 58).

Riviere's duties included briefing subcontractors on how to handle tenants that remained at the Premises during renovation and general safety (*id.* at 15). He would also "check all subs, the electricians, plumbers, carpenters, painters, window guys, floor guys" (*id.* at 15). Riviere had the authority to stop work (*id.* at 60). He was on site daily (*id.* at 28).

Riviere testified that he held a weekly general safety meeting that was attended by all workers (*id.* at 56). At those meetings, he showed Chanel workers "how to do the framing, how to install my sheet work, what codes, what tool needs a safety guide" and made sure that "everybody . . . [had] their hard hats on, safety boots, gloves, glasses and so on" (*id.* at 62). He

**154038/2019   GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT                    Page 5 of 21**
**Motion No.  004 005 006**

also instructed workers at the weekly safety meetings to not "stand on the top step of the ladder," "don't walk the ladder" and "don't sit on the ladder" (*id.* at 63). Riviere also testified that he "would explain everything to the workers [about] the right way to use the ladder" (*id.* at 135).

Riviere did not witness the accident and he first heard about it "way after" it happened (*id.* at 102). He did not prepare an accident report because he did not know that the accident occurred or what happened (*id.* at 103). He also was unaware of any complaints regarding the working conditions or equipment on site (*id.* at 116-117).

At the deposition, Riviere reviewed a contract between UHAB and MDG and confirmed that it was the contract for the Project (*id.* at 19). He also reviewed a contract between MDG and Chanel and confirmed that it was a subcontract for the Project (*id.* at 40).

### Deposition Testimony of Julio Dijol (Chanel's Vice President) (NYSCEF Doc. No. 172)

Julio Dijol testified that on the day of the accident, he was Chanel's vice president as well as a work supervisor. Chanel was an interior construction company, specializing in demolition and carpentry (Dijol tr at 13). Dijol's duties included providing estimates, obtaining contracts, and hiring employees. He would also visit job sites "almost every day" (*id.* at 18) to make sure that "everything is running well" (*id.* at 19).

Dijol was shown a copy of a contract between MDG and Chanel. He confirmed that it was the contract for the Project and that he had signed it on behalf of Chanel (*id.* at 27). Chanel's scope of work included demolition and carpentry. Chanel provided ladders for its workers (*id.* at 113).

Besides Dijol, Chanel had two supervisors for the Project, Freddie Quiroga and Angel Salinas (*id.* at 42). Both Quiroga and Salinas were at the Premises daily. Dijol, Quiroga and Salinas would direct and instruct the Chanel workers (*id.* at 54-55).

**154038/2019   GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT**
**Motion No.  004 005 006**

**Page 6 of 21**

6 of 21

[* 6]

Dijol testified that Riviere, MDG's supervisor, would inform Dijol, Quiroga and Salinas on "what was required for the day to be done" (*id.* at 47). MDG did not instruct Chanel's workers, or direct how the work was to be performed (*id.* at 118). Riviere would not speak to or direct any Chanel workers (*id.* at 47; 55 ["he did not have to instruct the workers"]).

Dijol also testified that Salinas had recommended plaintiff for the job, and he then hired her (*id.* at 73). Plaintiff's role was "laborer" (*id.* at 81), responsible for demolition and cleaning (*id.* at 82). After hiring plaintiff, Dijol gave plaintiff some initial training with ladders, including "where to set it up, where to open it, where to set the ladders" (*id.* at 79).

Dijol did not know about the accident until Chanel was served with the instant action (*id.* at 87). Normally, if an accident occurs, Chanel workers were instructed to "report it to the supervisor" (*id.* at 88). He never heard from his supervisors that an accident occurred (*id.* at 89). He did not if anyone witnessed the accident (*id.* at 140).

***Witness Statement of Angel Salinas (NYSCEF Doc. No. 174)***

Through discovery, defendants provided a notarized, sworn witness statement by Angel Salinas, dated November 14, 2022 (plaintiff's notice of motion, exhibit P; NYSCEF Doc. 174) (the 2022 Statement).

In the 2022 Statement, Salinas stated that he was a Chanel foreman at the Project. He did not witness the incident. He was "notified of an incident that [plaintiff] had at a job site" when he saw her "sitting on the floor" beside a ladder (*id.* at 1). He also stated that plaintiff told him that she "fell from a 6 foot A frame ladder as she was walking down" (*id.* at 1). He further stated that the ladder was upright when he saw plaintiff (*id.* at 2).

**154038/2019   GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT**          **Page 7 of 21**
  **Motion No.  004 005 006**

7 of 21

[* 7]

Salinas's 2022 statement was also notarized the same day it was signed. Attached to the statement is an interpreter's affidavit, which is also signed and sworn to on November 14, 2022 (*id.* at 3).

## DISCUSSION

"It is well settled that 'the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact'" (*Pullman v Silverman*, 28 NY3d 1060, 1062 [2016], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985] [internal citations omitted]). "Once such a prima facie showing has been made, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to raise material issues of fact which require a trial of the action" (*Cabrera v Rodriguez*, 72 AD3d 553, 553-554 [1st Dept 2010], citing *Alvarez*, 68 NY2d at 342).

"The court's function on a motion for summary judgment is merely to determine if any triable issues exist, not to determine the merits of any such issues or to assess credibility" (*Meridian Mgmt. Corp. v Cristi Cleaning Serv. Corp.*, 70 AD3d 508, 510-511 [1st Dept 2010] [internal citations omitted]). The evidence presented in a summary judgment motion must be examined "in the light most favorable to the non-moving party" (*Schmidt v One New York Plaza Co.*, 153 AD3d 427, 428 [2017], quoting *Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 339 [2011]) and bare allegations or conclusory assertions are insufficient to create genuine issues of fact (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (*id.*).

**154038/2019   GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT**
**Motion No.  004 005 006**

**Page 8 of 21**

8 of 21

[* 8]

*Preliminary Procedural Issues*

*The 2019 witness statements of Angel Salinas (NYSCEF Doc. No. 208)*

Chanel submits a witness statement of Angel Salinas dated August 26, 2019 (Chanel's aff in opposition, exhibit 4; NYSCEF Doc. No. 208) (the 2019 Statement). It contains information materially different than that provided in Salinas's 2022 statement.

Plaintiff argues that the 2019 statement should not be considered by the court as it was first disclosed in opposition to summary judgment and is procedurally flawed, in that it is not sworn to or notarized.[1]

The 2019 Statement was not disclosed during discovery (see plaintiff's reply aff, exhibit Y and Z [plaintiff's combined demands; Chanel's response]). The statement was first produced in Chanel's opposition papers. Chanel provides no explanation for why the statement was not produced prior to the filing of the note of issue. In addition, the statement is not in proper form as it was not sworn to under penalty of perjury and was not notarized.

Therefore, the 2019 Statement will not be considered (see e.g. *Bendik v Dybowski*, 227 AD2d 228, 229 [1st Dept 1996] [court did not consider unsworn witness statement because a witnesses' "unsworn statement . . . does not constitute evidence in admissible form"]; see also *Ulm 1 Holding Corp. v Antell*, 155 AD3d 585, 585 [1st Dept 2017]; *Morales v Gross*, 191 AD3d 439, 439 [1st Dept 2021] [document presented by the defendants "were not in admissible form" because they contained "no jurat, stamp of a notary public or any other indication that the experts were actually sworn"]).

---

[1] The court notes that Chanel separately submitted an interpreter's affidavit related to this statement, dated December 7, 2023 – over 4 years after the statement was purportedly made (NYSCEF Doc. No. 217).

**154038/2019   GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT**                **Page 9 of 21**
**Motion No.  004 005 006**

_The witness statement of Edgar Quiroga (NYSCEF Doc. No. 207)_

Chanel provides a witness statement of Edgar Quiroga, a Chanel employee, dated August 26, 2019 (Chanel aff in opposition, exhibit 3; NYSCEF Doc. No. 207) (the Quiroga Statement). As with Salinas's 2019 Statement, the Quiroga Statement is unsworn, unnotarized and was not produced during discovery. Therefore, for the same reasons stated above, the Quiroga Statement will not be considered (_Bendik,_ 227 AD2d at 229; _Ulm 1 Holding Corp._, 155 AD3d at 585; _Morales_, 191 AD3d at 439).

**_Plaintiff's Labor Law § 240(1) Claim as Against Defendants (Motion Sequence 006)_**

Plaintiff moves for summary judgment in her favor as to liability on her Labor Law § 240(1) claim. Chanel moves for summary judgment dismissing that claim as against defendants.

Labor Law § 240(1), known as the Scaffold Law, provides as relevant:

> "All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Labor Law § 240(1) "imposes a nondelegable duty on owners and contractors to provide devices which shall be so constructed, placed and operated as to give proper protection to those individuals performing the work" (_Quiroz v Memorial Hosp. for Cancer & Allied Diseases_, 202 AD3d 601, 604 [1st Dept 2022] [internal quotation marks and citations omitted]). It "'was designed to prevent those types of accidents in which the scaffold . . . or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person'" (_John v Baharestani_, 281 AD2d 114, 118 [1st Dept 2001], quoting _Ross v Curtis-Palmer Hydro-Elec. Co._, 81 NY2d 494, 501 [1993]).

**154038/2019   GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT**
**Motion No.  004 005 006**

**Page 10 of 21**

10 of 21

[* 10]

The absolute liability found within section 240 "is contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*O'Brien v Port Auth. of N.Y. & N.J.,* 29 NY3d 27, 33 [2017] [internal quotation marks and citation omitted]; *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]). Therefore, section 240(1) "does not cover the type of ordinary and usual peril to which a worker is commonly exposed at a construction site" (*Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 267 [1st Dept 2007]). In order to prevail on a Labor Law § 240(1) claim, a plaintiff must establish that the statute was violated, and that this violation was a proximate cause of the plaintiff's injuries (*Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [2015]).

"'Where a ladder is offered as a work-site safety device, it must be sufficient to provide proper protection. It is well settled that [the] failure to properly secure a ladder, to ensure that it remain steady and erect while being used, constitutes a violation of Labor Law § 240 (1)'" (*Montalvo v J. Petrocelli Constr., Inc.,* 8 AD3d 173, 174 [1st Dept 2004], quoting *Kijak v 330 Madison Ave. Corp.,* 251 AD2d 152, 153 [1st Dept 1998]). "Whether the device provided proper protection is a question of fact, except when the device collapses, moves, falls or otherwise fails to support the plaintiff and his materials" (*Pai v Nelson Senior Hous. Dev. Fund Corp.*, 232 AD3d 822, 825 [2d Dept 2024] [internal quotation marks and citation omitted]).

Here, plaintiff has established prima facie entitlement to summary judgment on her Labor Law § 240(1) claim, because she has sufficiently established that the Ladder she was working on at the time of the accident failed to protect her from falling. Plaintiff's position is supported by her uncontradicted testimony that "the ladder moved and [she] lost [her] balance" and fell backwards off the Ladder (plaintiff's 50-h tr at 45) and that the Ladder "moved forward and then

154038/2019   GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT
Motion No.  004 005 006

Page 11 of 21

[* 11]

it moved back" causing her to fall backwards (plaintiff's tr at 64) (*Goreczny v 16 Ct. St. Owner LLC*, 110 AD3d 465 [1st Dept 2013] [the plaintiff met his prima facie burden where his "deposition [was] uncontradicted insofar as he testified that he was injured when the unsecured ladder upon which he was working moved, causing him to fall"]; *Pinzon v Royal Charter Properties, Inc*., 211 AD3d 442, 443 [1st Dept 2022] [the plaintiff established prima facie entitlement to summary judgment on the section 240(1) claim "through his testimony that the ladder on which he was standing at the time of his accident moved from under him for no apparent reason]").

In opposition, Chanel argues that plaintiff is not entitled to summary judgment because she failed to establish that the ladder was defective. This argument is unavailing. A plaintiff "[is] not required to demonstrate that the [safety device] was defective (*Cuomo v Port Auth. of N.Y. & N.J.*, 228 AD3d 402, 402 [1st Dept 2024], citing *Williams v 520 Madison Partnership*, 38 AD3d 464, 465 [1st Dept 2007]).

Next, Chanel argues that questions of fact exist as to plaintiff's credibility based on evidence purporting to establish that the accident may not have happened. In support of this, they rely on the two inadmissible statements of Salinas and Quiroga (discussed above) and plaintiff's hospital records, which indicate that plaintiff fell from a "standing height" prior to the accident (Chanel's aff in opposition, exhibit 2; NYSCEF Doc. No. 206). However, hospital records are inadmissible for the purpose of raising an inconsistency in a plaintiff's testimony (*Mosqueda v Ariston Dev. Group*, 155 AD3d 504, 504 [1st Dept 2017] ["Defendants' contention that a description of the accident in plaintiff's medical records is inconsistent with his deposition testimony presents an issue of fact regarding his credibility, is unavailing. . . . [S]tatements in medical records, including acts or occurrences leading to the patient's hospitalization—such as a

narration of the accident causing the injury – not germane to diagnosis or treatment constitute inadmissible hearsay"] [internal quotation marks and citation omitted).

Defendants, relying on Salinas's 2022 Statement (which is properly before the court), argue that there is a question of fact as to whether plaintiff fell because the Ladder moved, or she just lost her balance. In support, defendants reference Salinas's statement that plaintiff "fell from a 6 foot A frame ladder as she was walking down" (plaintiff's notice of motion, exhibit P; NYSCEF Doc. 174 [the 2022 Statement]). They argue that this statement does not mention the Ladder moving and it, therefore, is inconsistent with plaintiff's testimony that the ladder moved.

Effectively, defendants argue that this inconsistency creates a second, independent version of the accident where the ladder did not shift or move, and that this version of the accident would not give rise to a Labor Law violation (*see Mitchell v City of New York,* 169 AD3d 505, 505 [1st Dept 2019] [dismissing section 240(1) claim where "plaintiff simply lost his footing while [descending] a properly secured, non-defective extension ladder that did not malfunction"] [internal quotation marks and citation omitted]).

"Where credible evidence reveals differing versions of the accident, one under which defendants would be liable and another under which they would not, questions of fact exist making summary judgment inappropriate" (*Ellerbe v Port Auth. of N.Y. & N.J.*, 91 AD3d 441, 442 [1st Dept 2012]; *see also Santiago v Fred-Doug 117, L.L.C.*, 68 AD3d 555, 556 [1st Dept 2009]).

Here, however, Salinas's 2022 Statement does not make any reference to ladder movement, nor does he state that the Ladder did not move. Defendants consider Salinas's silence on this issue as affirmative evidence that the Ladder, in fact, did not move but provide no support for this position.

**154038/2019   GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT**          **Page 13 of 21**
**Motion No.  004 005 006**

13 of 21

[* 13]

Further, Salinas statement that plaintiff reported that she fell while on the Ladder is consistent with her more detailed deposition testimony regarding how she lost her balance and fell from the ladder after it moved (*see Lin v 100 Wall Street Property LLC,* 193 AD3d 650, 650 [1st Dept 2021]). Therefore, defendants have not established a differing version of the accident sufficient to overcome plaintiff's prima facie proof.

Accordingly, the part of plaintiff's motion seeking summary judgment on her Labor Law § 240(1) claim as against defendants will be granted, and the part of Chanel's motion seeking to dismiss same will be denied.

### *Plaintiff's Common-Law Negligence and Labor Law § 200 Claims as Against MDG (Motion Sequence Number 006)*

Plaintiff moves for summary judgment in her favor on her common-law negligence and Labor Law § 200 claims against MDG.

"Labor Law § 200(1) codifies the common-law duty [of an owner or general contractor] to maintain a safe workplace" (*Toussaint v Port Auth. of New York and New Jersey*, 38 NY3d 89, 94 [2022]). "Claims under Labor Law § 200 and the common law fall under two categories: 'those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed'" (*Jackson v Hunter Roberts Constr., L.L.C.*, 205 AD3d 542, 543 [1st Dept 2022], quoting *Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 143-44 [1st Dept 2012]). "Where an existing defect or dangerous condition caused the injury, liability attaches if the owner or general contractor created the condition or had actual or constructive notice of it" (*id.*). On the other hand, "where the injury was caused by the manner and means of the work, including the equipment used, the owner or general contractor is liable if it actually exercised supervisory control over the injury-producing work" (*id.* [internal citations omitted]).

**154038/2019 GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT** **Page 14 of 21**
**Motion No. 004 005 006**

14 of 21

[* 14]

Here, the accident occurred when a ladder moved.  This implicates the means and methods of the work at the Premises.

Plaintiff argues that MDG's superintendent, Riviere (and therefore MDG) actually controlled Chanel's work, including plaintiff's work.  In support of this position, plaintiff relies on Riviere's testimony that he showed Chanel's workers "how to do the framing, how to install my sheet work, what codes, what tool needs a safety guide" and made sure that "everybody . . . [had] their hard hats on, safety boots, gloves, glasses and so on" (Riviere tr at 62), as well as his testimony that "every Monday" he instructed workers to not "stand on the top step of the ladder," "don't walk the ladder" and "don't sit on the ladder" (*id.* at 63).

This testimony does not establish, as a matter of law, that Riviere actually controlled the injury producing work, specifically the demolition work.  Riviere did not testify that he instructed Chanel workers regarding demolition, only "framing" and "sheet work."[2]

Riviere's remaining testimony about ladder safety addresses only general safety instruction, which is not evidence that supports a finding of actual supervisory control (*see e.g. Bisram v Long Is. Jewish Hosp.,* 116 AD3d 475, 476 [1st Dept 2014] ["even where an entity "had the authority to review onsite safety, . . . [such] responsibilities do not rise to the level of supervision or control necessary to hold the [entity] liable for plaintiff's injuries under Labor Law § 200"]).

Accordingly, the part of plaintiff's motion seeking summary judgment on her common-law negligence and Labor Law § 200 claims as against MDG will be denied.

---

[2] Plaintiff's counsel's question to Riviere as to whether he "ha[d] the authority to control the manner or method in which the Chanel Construction workers did their work" (Riviere tr at 61-62; NYSCEF Doc. No. 171) is overbroad and calls for a legal conclusion.  As such, Riviere's affirmative response does not establish, as a matter of law, that MDG had the actual authority to direct and control the means and methods of the Project's demolition work.

**154038/2019   GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT**                    **Page 15 of 21**
  **Motion No.  004 005 006**

15 of 21

[* 15]

### MDG's Third-Party Common-Law Indemnification and Contribution Claims as Against Chanel *(Motion Sequence Number 004)*

Chanel moves for summary judgment dismissing MDG's third-party common-law indemnification and contribution claims against it. As plaintiff was an employee of Chanel at the time of the accident, Workers' Compensation Law § 11 is relevant.

Workers' Compensation Law § 11 sets forth, in pertinent part, the following:

> "An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a 'grave injury' which shall mean only one or more of the following: death, permanent and total loss of use or amputation of an arm, leg, hand or foot, . . . or an acquired injury to the brain caused by an external physical force resulting in permanent total disability."

Therefore, "[a]n employer's liability for an on-the-job injury is generally limited to workers' compensation benefits, but when an employee suffers a 'grave injury' the employer also may be liable to third parties for indemnification or contribution" (*Rubeis v Aqua Club, Inc.*, 3 NY3d 408, 412-413 [2004]). "A grave injury within the meaning of Workers' Compensation Law § 11 includes an acquired injury to the brain caused by external physical force resulting in permanent total disability. Permanent total disability in the context of Workers' Compensation Law § 11 means unemployable in any capacity" (*Clarke v Empire Gen. Contr. & Painting Corp.*, 189 AD3d 611, 612 [1st Dept 2020] [internal quotation marks omitted]; quoting *Rubeis*, 3 NY3d at 417).

Chanel argues that the record contains no evidence of a grave injury as defined above. In opposition, MDG argues that plaintiff has alleged a traumatic brain injury.

Plaintiff's Bill of Particulars does allege a traumatic brain injury, but the record contains no evidence of any treatment for such an injury or that such injury resulted in a "permanent total

**154038/2019  GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT**
**Motion No.  004 005 006**

[* 16]

disability." Further, during the damages portion of her deposition, plaintiff testified that she had

not undergone an MRI or CT scan of her head, had not consulted with any doctor regarding a

head injury, had not been told that she suffered a head injury, and was not aware that she had

alleged a traumatic brain injury (plaintiff's damages tr at 99 [plaintiff's notice of motion, exhibit

K; NYSCEF Doc. No. 169]).[3]

Accordingly, in the absence of any evidence that plaintiff was treated for a traumatic

brain injury or suffered a permanent total disability, Workers Compensation § 11 bars MDG's

claims for common-law indemnification and contribution and Chanel is entitled to summary

judgment dismissing these claims.

### *MDG's Third-Party Contractual Indemnification Claims as Against Chanel (Motion Sequence Number 005)*

MDG moves for summary judgment in its favor granting its third-party contractual

indemnification claim as against Chanel.[4]

"A party is entitled to full contractual indemnification provided that the intention to

indemnify can be clearly implied from the language and purposes of the entire agreement and the

surrounding facts and circumstances" (*Karwowski v 1407 Broadway Real Estate, LLC*, 160

AD3d 82, 87-88 [1st Dept 2018], quoting *Drzewinski v Atlantic Scaffold & Ladder Co.*, 70

NY2d 774, 777 [1987]). "'The right to contractual indemnification depends upon the specific

language of the contract'" (*Trawally v City of New York*, 137 AD3d 492, 492-493 [1st Dept

---

[3] In addition, plaintiff does not mention a traumatic brain injury in any of the motion papers she has submitted, nor does she raise an objection to Chanel's characterization of her injuries in its motion.

[4] MDG appears to seek indemnification for both itself and UHAB. UHAB, however, is not a third-party plaintiff, and has no active claim for indemnification against Chanel. Therefore, to the extent that MDG seeks affirmative relief on behalf of UHAB, that part of MDG's motion will be denied.

**154038/2019   GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT**
  **Motion No.  004 005 006**

Page 17 of 21

17 of 21

[* 17]

2016] quoting *Alfaro v 65 W. 13th Acquisition, LLC*, 74 AD3d 1255, 1255 [2d Dept 2010]) and indemnity contracts "must be strictly construed so as to avoid reading unintended duties into them" (*905 5th Assoc., Inc. v Weintraub*, 85 AD3d 667, 668 [1st Dept 2011]). In contractual indemnification, "the one seeking indemnity need only establish that it was free from any negligence and was held liable solely by virtue of the statutory liability" (*Pena v Intergate Manhattan LLC*, 194 AD3d 576, 578 [1st Dept 2021], quoting *Correia v Professional Data Mgt., Inc.,* 259 AD2d 60, 65 [1st Dept 1999]).  Unless the indemnification clause explicitly requires a finding of negligence on behalf of the indemnitor, "[w]hether or not the proposed indemnitor was negligent is a non-issue and irrelevant" (*Correia,* 259 AD2d at 65)*.*

In addition, contractual indemnification claims are not barred by Workers' Compensation § 11 where the parties entered into a written indemnification agreement prior to the date of the accident (*Portelli v Trump Empire State Partners*, 12 AD3d 280, 281 [1st Dept 2004]).

*Additional facts relevant to this claim*

MDG and Chanel entered into a subcontract agreement for the Project, dated February 1, 2019 (the Agreement) (defendants' notice of motion, exhibit P; NYSCEF Doc. No. 137).  It is undisputed that the Agreement was entered into prior to plaintiff's accident.  Therefore, Workers Compensation Law § 11 does not bar this claim.

The Agreement contains an indemnification provision that provides, as relevant:

> "To the fullest extent permitted by law, [Chanel] hereby agrees to indemnify, defend, and hold [UHAB] . . . and [MDG] . . . harmless from and against any and all . . .  claims . . . that arise from, relate to or may be attributable to (or are claimed to arise from relate to or be attributable to), either directly or indirectly: . . . (vii) caused by, arising out of, resulting from, or occurring in connection with the performance of the Work by [Chanel], its subcontractors and suppliers, their agents, servants and/or employees including claims by the employees of [Chanel]"

154038/2019   GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT
Motion No.  004 005 006

Page 18 of 21

18 of 21

(*id.* at 29; Art. 12.03).

Here, the indemnification provision applies to plaintiff's accident, as the accident directly arose from Chanel's demolition work at the Premises pursuant to the Agreement. The indemnification provision does not require a finding of negligence.

In opposition, Chanel argues that its insurer is already providing a defense in this action; but provides no evidence establishing this, such as an acceptance letter. In addition, Chanel does not state whether its insurer has agreed to indemnification, which is the crux of this claim. Further, Chanel's arguments that a question of fact remains as to whether the accident occurred are insufficiently supported to give rise to a question of fact.[5]

Nevertheless, MDG must establish its freedom from negligence to succeed on its contractual indemnification claim (*Pena*, 194 AD3d at 578). It has not done so.

Here, there remains a question of fact as to Riviere's involvement in directing and controlling Chanel's workers at the Premises. Importantly, while Riviere testified that he showed workers "how to do the framing, how to install [the] sheet work" (Riviere tr at 62-63; *contrast* Dijol tr at 47 [stating that MDG employees "did not have to instruct (Chanel) workers"]); his testimony is silent with respect to demolition work. Essentially, MDG relies on a lack of evidence to establish its freedom from negligence, which it cannot do (*see e.g. Pimentel v DE Frgt. LLC,* 205 AD3d 591, 593 [1st Dept 2022] [pointing to a gap in proof is "insufficient to meet [the] initial burden" on a summary judgment motion]).

---

[5] Chanel's arguments are based on the 2019 affidavits and statements purportedly made by plaintiff in her medical records – each of which, as discussed above, are inadmissible hearsay.

**154038/2019   GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT**          **Page 19 of 21**
  **Motion No.  004 005 006**

Therefore, the scope of MDG's direction and control over the injury producing work (if any) – and whether it may be negligent with respect to plaintiff's accident – has not been established as a matter of law.

Accordingly, MDG has not established its freedom from negligence, and therefore, it is not entitled to summary judgment in its favor on its contractual indemnification claim as against Chanel at this time.

The parties remaining arguments were considered and were found unavailing.

## **CONCLUSION AND ORDER**

For the foregoing reasons, it is hereby

ORDERED that the motion of Chanel Construction Corp. (Chanel) (motion sequence number 004), pursuant to CPLR § 3212, for summary judgment dismissing defendant/third-party plaintiff MDG Design & Construction, LLC's (MDG) contribution and common-law indemnification claims as against it is granted, and those claims are dismissed; and it is further

ORDERED that the motion of MDG and GP-UHAB Housing Development Fund (UHAB) (together, defendants) (motion sequence number 005), pursuant to CPLR § 3212, for summary judgment in MDG's favor on its third-party contractual indemnification claims as against Chanel is denied; and it is further

ORDERED that the part of plaintiff Silvia Gonzalez's motion (motion sequence number 006), pursuant to CPLR § 3212, seeking summary judgment in her favor as to liability on her Labor Law § 240(1) claim against defendants is granted; and it is further

ORDERED that the part of plaintiff's motion (motion sequence number 006), pursuant to CPLR § 3212, seeking summary judgment in her favor as to liability on her common-law negligence and Labor Law § 200 claims as against MDG is denied; and it is further

**154038/2019   GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT**
**Motion No.  004 005 006**

Page 20 of 21

20 of 21

ORDERED that the remainder of the action shall continue.

20250224152637PGOETZEE34C7E6717D4EEBAEFB84DAFI845D7F

2/24/2025

**DATE**

**PAUL A. GOETZ, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**154038/2019  GONZALEZ, SILVIA vs. GP-UHAB HOUSING DEVELOPMENT**
**Motion No.  004 005 006**

Page 21 of 21

[* 21]